UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| SHAWN BRISCOE, | ) |
| Plaintiff, | ) |
| v. | ) Docket No. 19-00029-SDD-EWD |
| DALLAS STEWART and KENDALE WILLIAMS, | ) |
| Defendants. | ) |

## SECOND AMENDED COMPLAINT

COMES NOW Plaintiff Shawn Briscoe, by and through undersigned counsel, to file this Second Amended Complaint against the Defendants. This complaint has been amended to reflect new information regarding the identities of Dallas Stewart and Kendale Williams[1]. In support, he states the following:

## INTRODUCTION

1. On February 3, 2018, Elayn Hunt Correctional Center (EHCC) inmate Darryl Harris attacked Plaintiff Shawn Briscoe in the Fox 7 dormitory, burning him with chemicals and repeatedly stabbing him.

2. Immediately prior to the attack, then-EHCC Cadet Kendale Williams (identified as "Doe Defendant" in the original complaint), who was tasked with watching the Fox 7 dormitory, received an unidentified item from another inmate, Tremaine "Poo," placing it in her back pocket.

---

[1] Defendant Kendale Williams was misidentified as "Kendala Williams" in earlier versions of the complaint.

1

3. Then, during the attack, Sgt. Stewart and Cadet Williams stood by and watched as Mr. Briscoe was attacked. Neither made any attempt to intervene, call for back-up, or otherwise stop the attack.

4. Sgt. Stewart encouraged the attack as it was happening, shouting "They're getting that bitch, Briscoe!" as Mr. Briscoe was being burned and stabbed.

5. Throughout the attack, Sgt. Stewart and Cadet Williams were equipped with emergency beepers to call for support, but chose not to use them.

6. Mr. Briscoe's injuries were severe, as he suffered second-degree burns on his ear, forehead, and face, third-degree burns on his neck, chest, and left shoulder, and stab wounds on his neck, shoulder, leg, and a tendon in his foot.

7. Despite the obvious injuries, Sgt. Stewart refused to assist Mr. Briscoe after the attack or call for medical staff, telling him to "take your fucking licks, n***a."

8. Mr. Briscoe was forced to wait while enduring the pain of burn and stab wounds until there was a shift change, at which point he was taken to a local hospital and then sent to the Baton Rouge General Burn Unit.

9. Mr. Briscoe continues to suffer from a loss of hearing in his left ear and significant loss of vision in his left eye, which is scarred, as a result of the chemical burns. He has also developed migraines due to the strain put on his right eye.

## JURISDICTION AND VENUE

10. Plaintiff's claim arises under the Constitution and the laws of the United States. This Court has jurisdiction over Plaintiff's claims for federal rights violations, enforceable under the Fourteenth Amendment and 42 U.S.C. § 1983, 1343(a)(3). This Court has jurisdiction over all state violations in accordance with 28 U.S.C. § 1367.

11. The venue is proper in the Middle District of Louisiana under 28 U.S.C. § 1391(b)(2) as the Elayn Hunt Correctional Center, where a substantial part of the events or omissions that gave rise to the claim occurred, is located within Iberville Parish in the Middle District of Louisiana.

## THE PARTIES

*Plaintiff*

12. Plaintiff **Shawn Briscoe** (DOC # 494036) is of suitable age and capacity to file this suit. Plaintiff is currently resident of Jefferson Parish as an inmate at the Jefferson Parish Correctional Center. Formerly, during events that led to this suit, Plaintiff was a resident of Iberville Parish as an inmate at the Elayn Hunt Correctional Center.

*Defendants*[2]

13. Defendant **Dallas Stewart** was an officer of the Elayn Hunt Correctional Center, with the rank of sergeant. She is no longer employed by the Department of Public Safety and Corrections. She is sued in her individual capacity.

14. Defendant **Kendale Williams** (formerly, "Doe Defendant**")** was EHCC employee and correctional officer whose acts and/or omissions contributed to Plaintiff Shawn Briscoe's injuries. She is no longer employed by the Department of Public Safety and Corrections. She is sued in her individual capacity.

15. All of Defendants named in this Complaint acted under color of state law at all relevant times.

---

[2] James LeBlanc and Timothy Hooper were dismissed from this case on June 26, 2019. *See* R. Doc. 24.

## FACTS

**A. On February 3, 2018, Darryl Harris attacked Mr. Briscoe with the assistance of Sgt. Stewart.**

16. As of February 2018, Shawn Briscoe was incarcerated at the Elayn Hunt Correctional Center (EHCC) in Iberville Parish, Louisiana.

17. On the evening of February 2, 2018, Mr. Briscoe was moved out of administrative segregation at EHCC. He had spent 14 days in segregation for an alleged contraband violation, though the charges were later dropped.

18. At approximately 5:30 a.m. on February 3, 3018, Mr. Briscoe was in Fox 7 dormitory, Unit 2 sitting on his bunk bed.

19. Mr. Briscoe witnessed inmate Darryl Harris walk past his bunk area, then return a few minutes later.

20. When Mr. Harris returned, he threw heated chemicals in Mr. Briscoe's face, saying: "This is for the money I got paid. This is for the twenty-five hundred."

21. Then Mr. Harris said, "And this is for the other twenty-five" and started to stab Mr. Briscoe in the neck, shoulder, leg, and foot with a weapon. Mr. Briscoe pushed Mr. Harris off of him and fell backwards off of his bunk bed.

22. Sgt. Stewart, the officer tasked with overseeing the Fox 7 dormitory, encouraged the attack as it was happening, shouting "They're getting that bitch, Briscoe!" as Mr. Briscoe was being burned and stabbed.

23. Mr. Harris then said to Mr. Briscoe, "You know what fucking time it is. You gonna get it. If you think you going to live here, you going to die here."

24. As a result of the attack, Mr. Briscoe suffered second-degree burns on his ear, forehead, and face, third-degree burns on his neck, chest, and left shoulder, and stab wounds on his neck, shoulder, leg, and a tendon in his foot.

25. Immediately following the attack, Mr. Briscoe sought the help of Sgt. Stewart, who was the closest officer on duty.

26. Sgt. Stewart refused to assist Mr. Briscoe despite his obvious injuries, saying "Take your fucking licks, n***a."

27. Another inmate, Ryan Caldarera, came to Mr. Briscoe's aid while they waited for a shift change to receive medical care.

28. As Mr. Briscoe waited approximately 30 minutes for a shift change, still burned and bleeding, he worried that he could die before receiving any medical care.

29. After a shift change, the next officer also neglected to provide immediate assistance to Mr. Briscoe, even though he was still suffering from severe burn and stab wounds.

30. Approximately three hours after the attack, Mr. Briscoe was finally taken to a local hospital. The hospital documented his burns and transferred him to the Baton Rouge General Burn Unit.

31. Two inmates were eventually disciplined and criminally charged for the attack – Mr. Harris and Mr. Caldarera. Mr. Caldarera's charges were dropped. The criminal proceedings against Mr. Harris are ongoing.

**B. Mr. Briscoe was shown security footage of the attack and placed back in administrative segregation**

32. On February 10, 2018, Col. Thomas, Major White, and Lt. Logan showed Mr. Briscoe surveillance video from the attack.

33. On the video, inmate Tremaine "Poo" is seen handing something to Cadet Williams, who then places the item in her back pocket.

34. Mr. Harris is seen walking to the microwave and heating up the chemicals used in the attack.

35. Mr. Harris then attacks Mr. Briscoe, in plain view of Sgt. Stewart.

36. Instead of intervening and stopping the attack, Sgt. Stewart watches as Mr. Harris throws hot chemicals on Mr. Briscoe and stabs him repeatedly. Sgt. Stewart is seen calling over Cadet Williams who also watches without intervening.

37. Neither Sgt. Stewart nor Cadet Williams made any attempt to stop the attack or alert other officers on their emergency beepers.

38. When Mr. Briscoe was removed from the nursing unit, he was placed back in administrative segregation.

39. EHCC placed his attacker, Mr. Harris, in a nearby cell while Mr. Briscoe was still recovering from his serious injuries. Mr. Harris was close enough to continue threatening Mr. Briscoe, telling him there will be more violence if he fills out any "affidavits."

40. After leaving the nursing unit, Mr. Briscoe was denied medication necessary for treating his serious injuries.

**C. Shawn Briscoe filed multiple Administrative Remedy Procedures regarding the claims at issue**

41. In mid-February 2018, Mr. Briscoe filed an Administrative Remedy Procedure (ARP) about the attack, his injuries, the confiscated items, and not having access to his medication.

42. After filing the ARP, Warden Tim Hooper told Mr. Briscoe that the situation was under control, so the ARP was not necessary. Later, an unidentified EHCC Captain threatened Mr. Briscoe to stop filing ARPs.

43. Later, Mr. Briscoe was transferred from EHCC to the Jefferson Parish Correctional Center (JPCC).

44. At JPCC, Mr. Briscoe filed another ARP.

45. Thus, Mr. Briscoe has exhausted his administrative remedies prior to filing this Complaint.

### D. Shawn Briscoe continues to suffer injuries stemming from the attack

46. Mr. Briscoe's ongoing injuries include: partial loss of hearing in his left ear, partial vision loss and black spots in his left eye, migraines, substantial scarring and discoloration on his shoulder and back.

47. Since the attack, Mr. Briscoe has had difficulty receiving proper medical care to treat his injuries.

48. Mr. Briscoe continues to be charged for medications he needs to treat the ongoing injuries.

49. Mr. Briscoe's confiscated items have not been returned to him.

## CLAIMS FOR RELIEF

*Count One* – **Violations of the Eighth Amendment Pursuant to U.S.C. 42 § 1983**

50. Plaintiff realleges and incorporates each and every foregoing paragraph.

51. The Eighth Amendment of the United States Constitution, which applies to the States through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of cruel and unusual punishment on individuals. U.S. Const. amend. VIII.

52. It is well established that prison officials have a constitutional duty under the Eighth Amendment "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825 (1994) (*quoting Cortes-Quinones v. Jimenez-Nettleship*, 842 F. 2d 556, 558 (CA1), *cert. denied,* 488 U. S. 823 (1988)); *see also*, *Wilson v. Seiter*, 501 U. S. 294, 303 (1991) (describing the "protection an inmate is afforded against other inmates" as "a condition of confinement" that implicates Eighth Amendment protection).

53. Prison officials are required to "take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U. S. 517, 526-527 (1984). This is especially true as, by the very nature of the incarceration, the State has "stripped them of virtually every means of self-

protection and foreclosed their access to outside aid." *Farmer*, 511 U.S. at 833. As a result, "gratuitously allowing the beating or rape of one prisoner by another serves no 'legitimate penological objective' any more that it squares with 'evolving standards of decency.'" *Id.*, *quoting*, *Hudson v. Palmer*, *supra*, at 548; *Estelle v. Gamble*, 429 U. S. 97 (1976).

54.     Defendants were acting under the color of state law at all times relevant to this Complaint. *Monroe v. Pape*, 365 U.S. 167, 184 (1961) ("Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law.'"); *see also*, *Fox v. Sullivan*, 539 F.2d 1065 (5th Cir., 1976).

55.     For a prison official to be held liable under U.S.C. 42 § 1983 in a failure to protect claim, a plaintiff must show that a defendant acted with deliberate indifference in exposing an inmate to the risk of serious harm. *Farmer*, 511 U.S. at 834; *see also*, *Hare v. City of Corinth, Miss.*, 135 F.3d 320 (5th Cir., 1998). This is a subjective standard which requires knowledge of the risk of serious harm, though it does not require particular notice of the particular threat. *Farmer*, 511 U.S. at 848.

56.     Defendants acted with repeated deliberate indifference in failing to protect Plaintiff Shawn Briscoe from a substantial risk of serious harm.

57.     For instance, Defendant Williams was deliberately indifferent when she accepted payment of an unknown item from an inmate in exchange for allowing Harris to attack Plaintiff Briscoe. Defendant Stewart and Defendant Williams proceeded to watch the attack occur, but declined to intervene or call for assistance. And after the attack, when Plaintiff Briscoe was burned and bleeding, Defendants Stewart and Williams showed further deliberate indifference to Plaintiff Briscoe's serious medical needs when they refused to administer any medical care or call for medical assistance, opting instead to verbally harass the injured prisoner.

### *Count Two* - **Assault and Battery**

58. A person "who conspires with another person to commit an intentional or willful act is answerable, *in solido*, with that person, for the damage caused by such act." La. Civil Code. 2324(A).

59. Here, Sgt. Stewart and Cadet Williams conspired with an inmate to enable Mr. Harris to assault and batter Mr. Briscoe.

60. It was a battery because Mr. Harris completed a non-consensual harmful touching when he burned Mr. Briscoe with chemicals and stabbed him.

61. As a result of Defendants' acts and omissions, Plaintiff Briscoe suffered actual, foreseeable harm.

### *Count Three* – **State Law Negligence**

62. Plaintiff realleges and incorporates each and every foregoing paragraph.

63. Defendants' conduct described in this Complaint caused Plaintiff Briscoe to suffer harms as described above and below.

64. Due to their professional role as jailers, Defendants owe a duty to inmates, including Plaintiff Briscoe, to prevent harm from other inmates or other known sources of harm.

65. This duty was breached by Defendants' acts and omissions, including the failure to protect Plaintiff Briscoe and the failure to provide medical care at the time of injury or in the aftermath.

66. The risks and harms that Defendants caused were within the scope of protection afforded by the duties they owed to Plaintiff.

67. As a result of Defendants' acts and omissions, Plaintiff Briscoe suffered actual, foreseeable harm.

### *Count Four* – **Failure to Intervene**

68. Plaintiff realleges and incorporates each and every foregoing paragraph.

69. In the manner described above, during the constitutional violations described herein, one or more of the Defendants stood by without intervening to prevent the violation of Plaintiff Briscoe's constitutional rights, even though they had the opportunity to do so.

70. Although "no rule of constitutional law requires unarmed officials to endanger their own safety in order to protect a prison inmate threatened with physical violence," Defendant Stewart and Defendant Williams, for instance, had opportunities to intervene and prevent harm to Plaintiff Briscoe by using their EHCC-issued emergency beepers to call for back-up or by calling for medical assistance following the attack.

71. As a result of Defendants' failure to intervene, Plaintiff Briscoe suffered second-degree burns on his ear, forehead, and face, third-degree burns on his neck, chest, and left shoulder, and stab wounds on his neck, shoulder, leg, and a tendon in his foot, as well as emotional distress.

### *Count Five* – **Section 1983 Civil Conspiracy**

72. To state a § 1983 civil conspiracy claim, a plaintiff must allege "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002) (citations omitted; internal quotation marks omitted).

73. Here, Sgt. Stewart and Cadet Williams entered into an agreement with an inmate to inflict an unconstitutional injury upon Mr. Harris.

74. Sgt. Stewart took the overt act of taking something of value in exchange for letting Mr. Harris assault Mr. Briscoe.

75. On information and belief, Cadet Williams or Sgt. Stewart was incentivized and took something of value in exchange for letting Mr. Harris assault Mr. Briscoe.

### *Count Six* - **Violation of the Louisiana Constitution**

76. Defendants' actions and omissions as described above interfered with Plaintiff's right to be free from cruel and unusual punishment guaranteed by Louisiana's Constitution, Article I, Sec. 20.

### RELIEF REQUESTED

77. Wherefore Plaintiff requests judgment be entered against Defendants and that the Court grant the following:

   a. Declaratory relief;

   b. Judgment against Defendants for Plaintiff's asserted causes of action;

   c. Award of compensatory damages;

   d. Award of special damages;

   e. Award costs and attorneys' fees pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 12205, 28 C.F.R. § 35.175, and 29 U.S.C. § 794a(b);

   f. Order such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

/s/ *William Most*
William Most, La. Bar No. 36914
Law Office of William Most
201 St. Charles Ave., Ste. 114, # 101
New Orleans, LA 70170
T: (504) 509-5023
 Email: williammost@gmail.com

/s/
Michelle M. Rutherford, La. Bar No. 34968
 RUTHERFORD LAW
3110 Canal St.

11

>New Orleans, LA 70130
>Telephone:     (323) 641-0784
>Email:  michelle@rfordlaw.com
>
>*/s/ David Lanser*
>David Lanser, La. Bar No. 37764
>Law Office of William Most
>201 St. Charles Ave., Ste. 114, # 101
>New Orleans, LA 70170
>(504) 533-4521
>David.lanser@gmail.com
>
>***Counsel for Plaintiff Shawn Briscoe***