UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| SHAWN BRISCOE, *<br>   *Plaintiff* *<br>   * <br>v. *<br>   * <br>JAMES LeBLANC, TIMOTHY *<br>HOOPER, DALLAS STEWART, *<br>AND KENDALA WILLIAMS *<br>   *Defendants* * | Civil Action No. 19-00029<br><br>JUDGE SHELLY D. DICK<br><br>MAGISTRATE JUDGE<br>ERIN WILDER-DOOMS |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

**REPLY TO PLAINTIFF'S RESPONSE TO
STATEMENT OF UNDISPUTED MATERIAL FACTS**

**NOW INTO COURT,** through undersigned counsel, comes Dallas Stewart ("Sgt. Stewart"), Defendant in the above-styled cause, who respectfully responds to Plaintiff's denials of and qualifications to Sgt. Stewart's Statement of Undisputed Facts, as follows:

1. Defendant, Dallas Stewart, accepted a probationary appointment as a cadet with the Elayn Hunt Correctional Center (EHCC) on August 3, 3016.[1]

   PLAINTIFF'S RESPONSE:   Not disputed.

2. Upon satisfactory conclusion of the probationary term, Dallas Stewart attained permanent status with EHCC on August 14, 2017,[2] and rose to the level of Sergeant on February 15, 2017.[3]

   PLAINTIFF'S RESPONSE: Not disputed that Dallas Stewart concluded her probationary term and was a Sergeant at all times relevant to this litigation.

   DEFENDANT'S REPLY:   While not specifically denied, Ms. Stewart would aver that the documents speak for themselves, specifically (1) Rec. Doc. 51-4, Stewart MSJ - Exhibit B, memorandum of successful completion of probationary status with expiration of probationary status dated August 14, 2017, and (2) Rec. Doc. 51-5, Stewart MSJ - Exhibit C, employee notice indicating Ms. Stewart served as a Cadet from August 15, 2016 through February 14, 2017, and served as a Sergeant beginning February 15, 2017.

---

[1] Exhibit A, Acceptance of Probationary Appointment dated August 3, 2016.

[2] Exhibit B, Successful Completion of Probationary Appointment effective August 14, 2017.

[3] Exhibit C, Employee Notification Form.

3.     At all times relevant to the instant action, Shawn Briscoe was an inmate at EHCC housed in the Fox 7 dormitory.[4]

    PLAINTIFF'S RESPONSE: Not disputed that Shawn Briscoe was an inmate at EHCC housed in the Fox 7 dormitory on February 3, 2018, but considering he had been housed at various dormitories and facilities throughout his incarceration, disputed to the extent that a relevant event may have occurred before or after February 3, 2018, while an inmate in another facility.

    DEFENDANT'S REPLY: Plaintiff's qualification of this fact is immaterial as the event in question is alleged to have occurred on February 3, 2018 (Rec. Doc. 33, Second Amended Complaint, ¶ 1, p. 1; Heading A, p. 4).

4.     Sgt. Stewart was assigned to Fox 7 dormitory as one of the guards on the twelve (12) hour shift beginning at 6:00 p.m. on February 2, 2018 and ending at 6:00 a.m. on February 3, 2018.[5]

    PLAINTIFF'S RESPONSE: Not disputed that Dallas Stewart was assigned to work a twelve-hour shift at approximately the times stated, but disputed insofar as this suggests her actual hours worked. Ms. Stewart could not recall her exact shift assignment or what time she was actually relieved. Exhibit D ("Deposition of Dallas Stewart") at 38:2-39:6 ("I don't remember the time;" "Around 6:00 or something;" "But it depends on your relief.").

    DEFENDANT'S REPLY: Whether Ms. Stewart was actually relieved from her post a few minutes before or a few minutes after 6:00 a.m. is immaterial. The undisputed material fact is that Ms. Stewart was relieved around 6:00 a.m. (See Plaintiff's Exhibit D as set forth above).

5.     Just before shift change, at approximately 5:35:48 a.m., there was an altercation between inmate Briscoe and another inmate, Darryl Harris ("inmate Harris").

    PLAINTIFF'S RESPONSE: Not disputed, except to the extent that the wording implies that Plaintiff was anything but a victim.

    DEFENDANT'S REPLY: This statement of fact is not intended to imply Plaintiff's involvement, or lack thereof, as such is immaterial to the present motion. The material fact is that the incident involving Mr. Briscoe and inmate Harris occurred just before shift change, at approximately 5:35:48 a.m., which is undisputed.

6.     Video footage shows inmate Harris throwing a liquid substance onto inmate Briscoe and striking inmate Briscoe several times, inmate Briscoe jumping onto the beds causing some beds to shift, and then inmate Harris walking away.[6]

---

[4] *See* Rec. Doc. 33, ¶ 1.

[5] Exhibit D, Excerpts of Deposition Transcript of Dallas Stewart, p. 38, ll. 2-25 - p. 39, ll. 1-2.

[6] Exhibit E, Incident Report; Exhibit F, video footage of incident between inmate Briscoe and inmate Harris (identified by Plaintiff as File20180203053412), time stamp of entire-incident from 5:35:48 a.m. to 5:35:58 a.m.

<blockquote>

PLAINTIFF'S RESPONSE:   Not disputed that this is a general description of the events as depicted.  Further answering, the "striking" was done with a weapon.  Exhibit A ("Declaration of Shawn Briscoe") at ¶ 9; Exhibit B ("Major Craig White investigation"); Exhibit C ("Plaintiff's responses to interrogatories") at Int. 14; Exhibit H ("Dallas Stewart termination letter")(". . . resulting in Offender Briscoe having hot water thrown on him and being assaulted by Offender Harris with a weapon"); Exhibit I ("VR-1 report").

DEFENDANT'S REPLY:   Whether or not inmate Harris struck Mr. Briscoe with or without a weapon is immaterial.  Notwithstanding, and for purposes of this motion only, Sgt. Stewart does not dispute that a weapon was used by inmate Harris.[7]

</blockquote>

7. The entire altercation between inmate Briscoe and inmate Harris lasted ten (10) seconds, with inmate Harris beginning to walk away at 5:35:58.[8]

<blockquote>

PLAINTIFF'S RESPONSE:   Not disputed.

</blockquote>

8. Subsequent to the altercation, the video footage shows inmate Briscoe remove his shirt, dry himself off, straighten out his bed, put on shoes and/or socks, retrieve another shirt from his locker and put it on, and walk around the bed apparently drying it off as well.[9]

<blockquote>

PLAINTIFF'S RESPONSE:   Not disputed that this is a general description of the events as depicted.

</blockquote>

9. Inmate Briscoe appears calm and in no distress during the remaining video footage, and at no time can be seen attempting to approach the guards to indicate he had been attacked, injured, or was in need of medical assistance.[10]

<blockquote>

PLAINTIFF'S RESPONSE:   Disputed.  Shawn Briscoe was in significant distress, but due to the realities of prison culture attempted to downplay his injuries in order to avoid further issues with Darryl Harris or others.  Mr. Briscoe attempted to request help from guards, but Sgt. Stewart told him to "Take your fucking licks, n***a."  Ex. A at ¶¶ 13-15; Exhibit F at Ints. 5, 7, 8; R. Doc. 33 at ¶¶ 26-27; Exhibit G ("Plaintiff's Responses to Requests for Admission") at RFAs 1, 2.

DEFENDANT'S REPLY:   The videos speak for themselves, and clearly show that Briscoe remained on and near his bed and did not approach Sgt. Stewart (or any guard) to indicate that he had been attacked, injured, or that he was in need of medical assistance during Sgt. Stewart's shift (Rec. Doc. 51-8, video placeholder for conventionally filed video, identified as Stewart

</blockquote>

---

[7] If this Motion is denied and Sgt. Stewart moves forward with Plaintiff's deposition, Sgt. Stewart reserves the right to dispute this issue should any additional evidence come to light.

[8] Exh. F, at time stamp 5:35:48 - 5:35:58.

[9] Exh. F, at time stamp 5:35:59 -5:39:12 (end of footage).

[10] *Id.*

       MSJ-Exhibit F, at time-stamp 5:35:50 to end of video; Rec. Doc. 51-10, video placeholder for conventionally filed video, identified as Stewart MSJ-Exhibit H, at time-stamp 5:35:50 to end of video).

10.     During the altercation between inmate Briscoe and inmate Harris, Dallas Stewart (Defendant), Kendale Williams (dismissed as a defendant for failure to effectuate service), and Master Sergeant Williams (shift supervisor who was not made a party to this lawsuit), were in and around what is termed the "key area" on Fox 7 dormitory.[11]

       PLAINTIFF'S RESPONSE:   Not disputed.

11.     Sgt. Stewart was the individual with red hair on the video footage of the key area on Fox 7 dormitory.[12]

       PLAINTIFF'S RESPONSE:   Not disputed.

12.     At 5:35:53, Sgt. Stewart stands up and walks to the window overlooking D-Section, the precise time at which inmate Briscoe had jumped over the beds causing them to move and shift.[13]

       PLAINTIFF'S RESPONSE:   Not disputed that Sgt. Stewart's actions were contemporaneous with the time the attack occurred, though the surveillance video suggests she first turned toward the door at 5:35:50.

       DEFENDANT'S REPLY:   Sgt. Stewart does not dispute that the surveillance video shows she first turned toward the door at 5:35:50; however, the video is clear that she began to look down the tier at 5:35:53, just after inmate Harris pouring a liquid substance onto Plaintiff and striking him in a stabbing motion and as inmate Briscoe was jumping away from inmate Harris (Rec. Doc. 51-10, video placeholder for conventionally filed video, identified as Stewart MSJ-Exhibit H).

13.     The video-footage directly reflects Sgt. Stewart's unwavering account that she heard a commotion sounding like lockers and beds moving around which prompted her to go to the window.[14]

       PLAINTIFF'S RESPONSE:   Not disputed that Sgt. Stewart testified that she heard lockers moving around, but the characterization that her testimony was "unwavering" is disputed. For instance, Sgt. Stewart also testified that it was not unusual to hear lockers and beds moving

---

[11] Exh. D, Stewart depo., pp. 126, ll. 4-25 - 127, ll. 1-14.; Exhibit G, diagram of Fox 7 dormitory. Note that inmate Briscoe and inmate Harris were assigned to D-section (See: Exh. 3, Incident Report).

[12] Exh. D, Stewart depo., p. 127, ll. 15-18.

[13] Exh. F, at time-stamp 5:35:53 and Exh. H at time-stamp 5:35:53

[14] Exh. D, Stewart depo., pp. 83, ll. 2-25 - 84, ll. 1-23;

around and that the sound was consistent with someone moving a bed, neither of which would explain the reaction seen in the video footage. Ex. D at 85:11-86:2.

DEFENDANT'S REPLY:

The video speaks for itself. Sgt. Stewart's reaction is entirely consistent with hearing a commotion that was not necessarily unusual (i.e., hearing beds moving about), but warranted taking a look. Hearing the noises, she calmly walked to the door and looked out the window, proceeding to look away several times several times and even walking away briefly at one point (Rec. Doc. 51-10, video placeholder for conventionally filed video, identified as Stewart MSJ-Exhibit H).

14. Between the time Sgt. Stewart reached the window at 5:35:55 and the time she walked away from the area at 5:37:26, she looked away several times, talking with the shift supervisor and keeping the shift supervisor abreast of what she could see and hear on the tier.[15]

PLAINTIFF'S RESPONSE:

Disputed that Sgt. Stewart was "keeping the shift supervisor abreast of what she could see and hear on the tier." Sgt. Stewart testified that she does not remember what she was talking about to the shift supervisor and that she was "not sure" if it "had to do with the sounds [she] heard." Ex. D at 130:6-12. Not disputed that Sgt. Stewart was at the window for approximately 1 ½ minutes as described.

DEFENDANT'S REPLY:

Plaintiff admits in his Opposition Memorandum that during this section of the video Sgt. Stewart occasionally turned to her supervisor to "apparently describe events as the unfolded." The inconsistency between Plaintiff's acknowledgment of this fact in the Opposition memo while disputing this fact here is curious; however, while it is not disputed that it appears from the video that Sgt. Stewart is talking about what is happening on the tier, whether or not this is in fact what she was in fact discussing is immaterial. What is material and undisputed is that Sgt. Stewart was not continually staring down the tier for 1 ½ minutes. Rather, from time-stamp 5:35:53 (the moment she gets to the door and looks in the tier), to time-stamp 5:37:26 when she walks away, Sgt. Stewart looks away from the door a number of times, even walking away briefly at one point. The only individual who could be considered to be staring down the tier uninterrupted is Kendale Williams (Rec. Doc. 51-8, video placeholder for conventionally filed video, identified as Stewart MSJ-Exhibit F; Rec. Doc. 51-10, video placeholder for conventionally filed video, identified as Stewart MSJ-Exhibit H).

---

[15] Exh. H, at time-stamp 5:35:51 - 5:37:33; Exh. D, Stewart depo., pp. 40, ll. 4-25; pp. 92, ll. 19-25 - 96, ll. 1-21; pp. 128, ll. 8-25 - 133, ll. 1-18.

15. The only individual who continually looked down the tier without interruption was Kendale Williams, the individual who is no longer a party to the lawsuit.[16]

    PLAINTIFF'S RESPONSE: Not disputed.  Further responding, Sgt. Stewart briefly looked away for a couple of seconds, but stayed in the vicinity of the window and continued to watch with Ms. Williams.  Rec. Doc. 51-1, Exhibits F and H.

    DEFENDANT'S REPLY:   See reply to number 14 above.  The videos speak for themselves.

16. Kendale Williams remained at the window by herself until she stepped away at 5:38:27 a.m..[17]

    PLAINTIFF'S RESPONSE: Not disputed that Ms Williams was at the window by herself from approximately 5:27:25 to 5:38:27 a.m. R. Doc. 51-1 Exhibits F and H.

    DEFENDANT'S REPLY:   Plaintiff's qualification of this fact is not disputed.  The video speaks for itself.

17. During this same time period the fire alarm went off, and Sgt. Stewart walked away from the area to get her supervisor so that he could address the fire alarm issue.[18]

    PLAINTIFF'S RESPONSE:   Not disputed.

18. Both the fire alarm and the altercation between inmate Briscoe and inmate Harris transpired nearing the end of Sgt. Stewart's shift.[19]

    PLAINTIFF'S RESPONSE:   Not disputed.

19. The log book contemporaneously maintained shows the fire alarm went off at 5:35 a.m. and was reset at 5:53 a.m., after Sgt. Stewart went to alert her supervisor that he needed to address the alarm.[20]

    PLAINTIFF'S RESPONSE: Not disputed.

---

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] Exhibit I, relevant page from Kendale Williams' log-book.

20. It was not until 8:43 a.m., nearly three (3) hours *after* Sgt. Stewart's shift ended, that inmate Briscoe indicated to anyone that he was in need of medical attention.[21]

    PLAINTIFF'S RESPONSE: Disputed. Mr. Briscoe informed Ms. Stewart that he needed medical attention shortly after the attack, but she told him to "Take your fucking licks, n***a." Further answering, other inmates attempted to seek medical attention from Ms. Stewart on Mr. Briscoe's behalf but were rebuffed. Ex. A at ¶¶ 13-15; Ex. F at Its. 5, 7, 8; R. Doc. 33 at ¶¶ 26-27; Ex. G at RFAs 1, 2.

    DEFENDANT'S REPLY:

    The video footage speaks for itself. It is evident that Mr. Briscoe did not seek medical assistance from Ms. Stewart (See detailed facts, argument, and evidentiary support in Sgt. Stewart's Reply to Plaintiff's Opposition to Motion for Summary Judgement filed contemporaneously herewith, pp. 4-5 and p. 10). Plaintiffs self-serving statements are in direct conflict with competent evidence and thus cannot be considered as evidence to create a genuine question of fact.

21. The guard on duty, Sergeant Angela Honora ("Sgt. Honora") notified then Major Craig White ("Col. White"), who obtained medical care for inmate Briscoe and conducted an investigation.[22]

    PLAINTIFF'S RESPONSE: Not disputed.

22. Video footage at that time shows inmate Briscoe apparently spilling something on himself near the microwave, then pulling off his shirt and writhing around in apparent pain and distress.[23]

    PLAINTIFF'S RESPONSE: Not disputed, except to the extent this implies that his injuries were not the result of the earlier attack.

    DEFENDANT'S REPLY:
    Whether or not Plaintiff was burned as a result of the attack or by his own hand is immaterial, the medical records only support the contention that Briscoe burned himself accidentally as opposed to being the result of an attack (Rec. Doc. 51-14, p. 2, Acadian Ambulance; Rec. Doc. 51-15, p.3; Rec. Doc. 51-16, Elayne Hunt Correctional Center, pp. 2-3).

---

[21] Exh. E, Incident Report.

[22] *Id.*

[23] Exhibit J, video footage of inmate Briscoe spilling hot liquid on himself and seeking out medical attention at time-stamp 8:40:33 a.m. - 8:45:18 a.m. (identified by Plaintiff as File20180203083916); Exhibit K, video footage of inmate Briscoe running out of the tier to obtain medical attention at time stamp 8:45:11 a.m. - 8:45:18 a.m. (identified by Plaintiff as File20180203084458.

23. Inmate Briscoe was picked up by Acadian Ambulance and informed the health care provider(s) that he burned himself while heating up noodles in the microwave.[24]

    PLAINTIFF'S RESPONSE: Not disputed, except to the extent that this implies Plaintiff did not inform the health care providers of the tab wounds and previous burning by Darryl Harris. Ex. A at ¶¶ 18-19.

    DEFENDANT'S REPLY:

    Plaintiff's declaration is in direct conflict with the medical records issued by three separate medical providers, all indicating that inmate Briscoe in fact did not inform the health care providers of the alleged stab wounds and alleged previous burning and thus such declaration is not competent evidence that may be used to create a question of material fact (Rec. Doc. 51-14, p. 2, Acadian Ambulance; Rec. Doc. 51-15, p.3; Rec. Doc. 51-16, Elayne Hunt Correctional Center, pp. 2-3).

24. Inmate Briscoe made no mention of having been stabbed.[25]

    PLAINTIFF'S RESPONSE: Disputed. Plaintiff both mentioned having been stabbed and received care for his stab wounds. Ex. A at ¶¶ 18-19.

    DEFENDANT'S REPLY:

    Plaintiff's declaration is in direct conflict with the medical records issued by three separate medical providers, none of which referenced any discussion about stab wounds or treatment for alleged stab wounds and thus said declaration is not competent evidence that may be used to create a question of material fact (Rec. Doc. 51-14, p. 2, Acadian Ambulance; Rec. Doc. 51-15, p.3; Rec. Doc. 51-16, Elayne Hunt Correctional Center, pp. 2-3).

25. Upon arriving at Baton Rouge General, inmate Briscoe again asserted that his burns were caused accidentally when he removed a bowl of noodles from the microwave and spilled boiling water on himself at approximately 9:00 a.m. that morning.[26]

    PLAINTIFF'S RESPONSE: Not disputed that he mentioned the bowl of noodles, but disputed that he did not also inform the health care professionals of the earlier burning and stab wounds.

    DEFENDANT'S REPLY: Plaintiff's declaration is in direct conflict with the medical records issued by three separate medical providers, all indicating that inmate Briscoe in fact did not inform the health care providers of the alleged stab wounds and alleged previous burning and

---

[24] Exhibit L, relevant portion of Acadian Ambulance Records, confidential information redacted.

[25] *Id.*

[26] Exhibit M, relevant portion of Baton Rouge General records, confidential information redacted.

thus such declaration is not competent evidence that may be used to create a question of material fact (Rec. Doc. 51-14, p. 2, Acadian Ambulance; Rec. Doc. 51-15, p.3; Rec. Doc. 51-16, Elayne Hunt Correctional Center, pp. 2-3).

26. Inmate Briscoe made no mention of having been stabbed and received no treatment for any cuts or wounds that could have been the result of being stabbed at Baton Rouge General.[27]

    PLAINTIFF'S RESPONSE:   Disputed.  Ex. A at ¶¶ 18-19.

    DEFENDANT'S REPLY:   Plaintiff's declaration is in direct conflict with the medical records issued by three separate medical providers, none of which referenced any discussion about stab wounds or treatment for alleged stab wounds and thus said declaration is not competent evidence that may be used to create a question of material fact (Rec. Doc. 51-14, p. 2, Acadian Ambulance; Rec. Doc. 51-15, p.3; Rec. Doc. 51-16, Elayne Hunt Correctional Center, pp. 2-3).

27. The EHCC skilled nursing unit records show that inmate Briscoe spilled water from the microwave, not that his injury was caused by an altercation with another inmate.[28]

    PLAINTIFF'S RESPONSE:  Not disputed that the records do not mention an altercation.

28. The EHCC skilled nursing unit records and make no mention of inmate Briscoe sustaining injuries consistent with stabbing nor of rendering any care for cuts or wounds that could have been the result of being stabbed.[29]

    PLAINTIFF'S RESPONSE: Not disputed, except to the extent that this implies he did not sustain such injuries or receive such care.

    DEFENDANT'S REPLY:   Plaintiff's declaration is in direct conflict with the medical records issued by three separate medical providers, none of which referenced any discussion about stab wounds or treatment for alleged stab wounds and thus said declaration is not competent evidence that may be used to create a question of material fact (Rec. Doc. 51-14, p. 2, Acadian Ambulance; Rec. Doc. 51-15, p.3; Rec. Doc. 51-16, Elayne Hunt Correctional Center, pp. 2-3).

29. Inmate Briscoe did not alert anyone prior to 8:45 a.m. that he was in need of medical attention.[30]

    PLAINTIFF'S RESPONSE: Disputed.  Mr. Briscoe informed Ms. Stewart that he needed medical attention shortly after the attack, but she told him to "Take our fucking licks, n***a." Further answering, other inmates attempted to seek medical attention from Ms. Stewart on Mr.

---

[27] *Id.*

[28] Exhibit N, records from EHCC treatment center, confidential information redacted.

[29] *Id.*

[30] Exh. F, at time stamp 5:35:59 -5:39:12 (end of footage).

Briscoe's behalf, but were rebuffed. Ex. A at ¶¶ 13-15; Ex. F at Its. 5, 7, 8; R. Doc. 33 at ¶¶ 26-27; Ex. G at RFAs 1, 2.

DEFENDANT'S REPLY: The video footage speaks for itself. It is evident that Mr. Briscoe did not seek medical assistance from Ms. Stewart (See detailed facts, argument, and evidentiary support in Sgt. Stewart's Reply to Plaintiff's Opposition to Motion for Summary Judgement filed contemporaneously herewith, pp. 4-5 and p. 10). Plaintiffs self-serving statements are in direct conflict with competent evidence and thus cannot be considered as evidence to create a genuine question of fact.

30. The new guards from the 6:00 a.m. shift made rounds and found everything secure at 6:20 a.m., 7:05 a.m., 8:10 a.m., and 8:31 a.m., all before inmate Briscoe spilled hot water on himself and notified EHCC he was in need of medical attention.[31]

PLAINTIFF'S RESPONSE: Not disputed that the logbook states what is described.

DEFENDANT'S REPLY: There is no allegation nor any evidence to indicate that the logbook is incorrect.

31. Col. White's investigation did not reveal that Sgt. Stewart witnessed the altercation between inmate Briscoe and inmate Harris.[32]

PLAINTIFF'S RESPONSE: Not disputed that the investigation did not make a specific determination. Further answering, Col. White testified that *whether or not* Defendant Stewart witnessed the altercations she should have made a round to investigate. Ex. C at 38:20-39:16.

DEFENDANT'S REPLY: Sgt. Harris does not dispute Col. White's testimony; however, in further response, making a round would not have prevented the attack, and there is no evidence it would have resulted in Sgt. Stewart discovering that inmate Briscoe was in need of medical attention (if in fact he was in need of medical attention (See detailed facts, argument, and evidentiary support in Sgt. Stewart's Reply to Plaintiff's Opposition to Motion for Summary Judgement filed contemporaneously herewith, pp. 4-5 and pp. 11-12).

32. The reason for Sgt. Stewart's termination was not because was not because the commotion heard by Sgt. Stewart was a breach of security but, rather, the concern over what *could* have happened after the initial altercation if things would have escalated.[33]

PLAINTIFF'S RESPONSE: Disputed. Although the concern over what could have happened was a reason for termination, it was not the sole reason for termination. For instance, Col. White testified that one reason Defendant Stewart was terminated is that she "should have went

---

[31] See Exh. I, entries by Stg. Honora subsequent to 6:12 a.m.

[32] Exhibit O, Deposition Excerpt of Lt. Colonel Craig White, pp. 38, ll. 1-25 - 39, ll. 1-16.

[33] Exh. O, Col. White depo., pp. 49, ll. 23-25 - 52, ll. 1-21.

down the tier,  and, you know, maybe she could have, you know, intervened or – or – or seen something going on that would have prompted her to call a supervisor; however, this wasn't done.  Ex. C at 54:6-55:22.

DEFENDANT'S REPLY: Sgt. Harris does not dispute Col. White's testimony; however, in further response, going down the tier would not have prevented the attack, and there is no evidence it would have resulted in Sgt. Stewart discovering that inmate Briscoe was in need of medical attention (if in fact he was in need of medical attention (See detailed facts, argument, and evidentiary support in Sgt. Stewart's Reply to Plaintiff's Opposition to Motion for Summary Judgement filed contemporaneously herewith, pp. 4-5  and pp. 11-12).

33.  Inmate Briscoe and inmate Harris were not on each other's enemy list.[34]

PLAINTIFF'S RESPONSE:   Not disputed.

34.  Col. White was unaware of any issues or concerns between inmate Briscoe and inmate Harris.[35]

PLAINTIFF'S RESPONSE:   Not disputed.

35.  With the exception of seeing their names on the bed book for Fox 8 dormitory, Sgt. Stewart had not interacted with either inmate Briscoe or inmate Harris and had no reason to believe there may be a problem between them.[36]

PLAINTIFF'S RESPONSE:  Disputed.  Defendant Stewart and Plaintiff knew each other prior to the attack and Defendant Stewart even threatened Plaintiff when he arrived at the dormitory by calling him a "rat" after she recognized him.

DEFENDANT'S REPLY:   The competent evidence in the record does not support this contention and there is no corroborating testimony whatsoever to support Plaintiff's claims (See detailed facts, argument, and evidentiary support in Sgt. Stewart's Reply to Plaintiff's Opposition to Motion for Summary Judgement filed contemporaneously herewith, pp. 9-10).

36.  The only basis for Plaintiff's allegation of conspiracy is video footage where Cadet Williams, *not* Sgt. Stewart, *appears* to take something from an inmate housed in a different section of the Fox 7 dormitory and place it in her pocket.[37]

PLAINTIFF'S RESPONSE:  Disputed.  Defendant Stewart called Plaintiff a"rat" earlier in the shift where he was ultimately attacked, which caused him to worry for his safety.  Ex. A at ¶¶

---

[34] Exh. O, Col. White depo., pp. 53, ll. 6-25 - 54, ll. 1-5.

[35] *Id.*

[36] Exh. D, Stewart depo., pp. 73, ll. 21-25 - 76, ll. 1-4.

[37] Exh. H at time-stamp 5:33:13 - 5:33:52.

4-6. Further answering, Defendant Stewart witnessed the attack along with Cadet Williams and not only failed to intervene, but did not do a round to ensure Plaintiff's safety or call for medical assistance. Ex. A at ¶¶ 13-`5; Ex. C at 42:3-43:4.

DEFENDANT'S REPLY: The competent evidence in the record does not support the contention that Sgt. Stewart called Plaintiff a "rat" and there is no corroborating testimony whatsoever to support this claim (See detailed facts, argument, and evidentiary support in Sgt. Stewart's Reply to Plaintiff's Opposition to Motion for Summary Judgement filed contemporaneously herewith, pp. 9-10).

37. Inmate Briscoe filed a requests for administrative remedies with EHCC whereby the EHCC determined that there was no information to corroborate inmate Briscoe's complaints against Sgt. Stewart.[38]

PLAINTIFF'S RESPONSE: Not disputed that Col. Jason Russ did not find corroborating information, but, further answering, the ARP response states that the reason he was unable to find corroborating information is that "Sgt. Dallas Stewart is no longer employed at Elayn Hunt Correctional Center and could not be interviewed." R. Doc. 51-18 at 3.

DEFENDANT'S REPLY: Plaintiff's request for administrative remedies was not denied solely because Sgt. Stewart could not be interviewed. Rather, EHCC had access to the entire record, including information regarding disciplinary action against Sgt. Stewart (Rec. Doc. 51-18, Exhibit P to Stewart's Motion for Summary Judgement, Administrative Remedy Procedure (ARP) filed by Shawn Briscoe and related findings). After fully investigating the matter the EHCC found no evidence or witnesses to support inmate Briscoe's allegation that the guards watched as he was attacked, and the EHCC further noted that inmate Briscoe had access to health care services through sick call 24 hours a day, 7 days a week and he had every opportunity to use that procedure (Rec. Doc. 51-18, p. 3).

*Signatures on Separate Page*

---

[38] Exhibit P, Administrative Remedy Procedure (ARPs) filed by Inmate Briscoe.

**Respectfully submitted,** this the 9th day of March, 2022

                **JEFF LANDRY**
                **ATTORNEY GENERAL FOR**
                **THE STATE OF LOUISIANA**

**BY:**    */s/ Melissa S. Losch*
                **ALEJANDRO "AL" PERKINS (#30288)**
                **Email: aperkins@hamsil.com**
                **MELISSA S. LOSCH, T.A. (#26811)**
                **Email: mloschl@hamsil.com**
                **JOHN R. BLANCHARD (#37036)**
                **Email: jblanchard@hamsil.com**
                **SPECIAL ASSISTANT ATTORNEY GENERAL**
                **HAMMONDS, SILLS, ADKINS AND GUICE**
                2431 S. Acadian Thruway, Suite 600
                Baton Rouge, Louisiana 70808
                Telephone (225) 923-3462
                Facsimile   (225) 923-0315

## CERTIFICATE OF SERVICE

I do hereby certify that, on the date stated below, a true and correct copy of the above and foregoing **STATEMENT** was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the court's electronic filing system.

**BATON ROUGE, LOUISIANA,** this 9th day of March, 2022

                                            *s/ Melissa S. Losch*
                                            MELISSA S. LOSCH