UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SHAWN BRISCOE, | * | |
| *Plaintiff* | * | Civil Action No. 19-00029 |
| | * | |
| v. | * | JUDGE SHELLY D. DICK |
| | * | |
| JAMES LeBLANC, TIMOTHY | * | MAGISTRATE JUDGE |
| HOOPER, DALLAS STEWART, | * | ERIN WILDER-DOOMS |
| AND KENDALE WILLIAMS | * | |
| *Defendants* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**MAY IT PLEASE THE COURT:**

Defendant, Dallas Stewart ("Sgt. Stewart"), respectfully submits this Reply Memorandum to address Plaintiff, Shawn Briscoe's ("inmate Briscoe"), misstatements of the facts, evidence in the record, and Sgt. Stewart's arguments in his Opposition to Motion for Summary Judgment filed at Rec. Doc. 55. Sgt. Stewart has not addressed every argument presented in Plaintiff's Opposition to the Motion for Summary Judgment but submits this Reply only to those issues that require further response. As explained below, Sgt. Stewart would show that inmate Briscoe fails to present competent evidence in support of his claims, and Sgt. Stewart's Motion for Summary Judgment should be granted.

**PROCEDURAL POSTURE**

In the interest of judicial efficiency and to avoid unnecessary duplication, the School Board incorporates by reference the detailed information provided in its initial brief regarding the procedural posture of this case.[1] In his Opposition, Plaintiff implies throughout that Sgt. Stewart's motion is premature on the basis that inmate Briscoe has yet to be deposed.[2] Plaintiff has submitted a sworn

---

[1] Record Document 51-2, Memorandum in Support of Motion for Summary Judgement, pp. 1-4.

[2] Record Document 55, Opposition to Motion for Summary Judgement.

declaration and, along with his responses to written discovery, it is unclear what more Plaintiff could provide through oral testimony. Therefore, in an effort to resolve this matter expeditiously under the current circumstances, Defendant submits her Motion for Summary Judgement based on the information that is currently contained in the record. Nevertheless, if this Court deems this matter to be premature and/or that disputed material facts exist, Sgt. Stewart reserves her right to move forward with Plaintiff's deposition and to file any dispositivie motions as may be deemed appropriate once the stay has been lifted.[3]

**FACTS**

In the interest of judicial efficiency and to avoid unnecessary duplication, Sgt. Stewart incorporates by reference the detailed facts and arguments set forth in her Memorandum in Support of Motion for Summary Judgment along with all exhibits attached thereto.[4] Here, Sgt. Stewart will address inaccuracies and unsupported facts submitted in Plaintiff's Opposition.

It is Plaintiff's contention that rather than intervening, Sgt. Stewart was an active participant in the attack, encouraging inmate Harris by shouting "They're getting that bitch Briscoe!"[5] However, a careful review of the video evidence plainly shows that Sgt. Stewart was not yelling towards the tier during the three (3) seconds of the actual "attack," nor the seven (7) seconds following the "attack" until the point where inmate Harris walks away. Specifically, inmate Harris approached inmate Briscoe,

---

[3] Record Document 48, Order granting Motion to Stay Discovery; Record Document 49, second Joint Motion to Stay Discovery; Record Document 50, Order granting second Motion to Stay Discovery.

[4] Rec. Doc. 51-2 with supporting documents filed at Rec. Doc. 51-3 through 51-18 and video evidence conventionally filed with the Court. See also Rec. Doc. 51-1, Sgt. Stewart's Statement of Undisputed Material Facts, along with Sgt. Stewart's contemporaneously filed Reply to Rec. Doc. 55-1, Plaintiff's Response to Statement of Undisputed Material Facts.

[5] Rec. Doc. 55, p. 2.

threw what appeared to be a liquid substance on him and then struck him in a stabbing motion (the "attack") over the span of three (3) seconds, identified on the video at time-stamp 5:35:48 - 5:35:50.[6] Inmate Briscoe then jumps away from inmate Harris, with Harris apparently in pursuit but failing to reach inmate Briscoe, and ending with Harris walking away at 5:35:58.[7]  Meanwhile, from 5:35:48 - 5:35:50, Sgt. Stewart is standing in the key section with her supervisor and with Cadet Williams, not facing the door but facing her colleagues.[8]  At 5:35:50 she hears a noise, moves toward the door at 5:35:53, and stands at the door starting at 5:35:55, after the "attack" was over  and three (3) seconds before inmate Harris walked away at 5:35:58.[9]   It is clear on the video footage Sgt. Stewart was not talking at all, much less shouting and encouraging inmate Harris, during that short three (3) second time-period before inmate Harris walked away at 5:35:58.[10]  In fact, at no point from 5:35:55 to 5:37:26 (when Sgt. Stewart walked away from the area) does the video reflect Sgt. Stewart talking to anyone on the tier or shouting down the tier.[11]  Rather, Sgt. Stewart can be seen  turning way from the door, looking back and forth, and talking with her supervisor during that time-period, not simply "staring" down the tier

---

[6] Rec. Doc. 51-8, video placeholder for conventionally filed video, identified as Sgt. Stewart MSJ-Exhibit F and identified by Plaintiff as File20180203053412 (video footage of incident between inmate Briscoe and inmate Harris), at time-stamp 5:35:48 to 5:35:58.

[7] Id.

[8] Rec. Doc. 51-10, video placeholder for conventionally filed video, identified as Sgt. Stewart MSJ-Exhibit H and identified by Plaintiff as File20180203053001 (video footage of guards before, during, and immediately following incident between inmate Briscoe and inmate Harris), at time stamp 5:35:48 to 5:35:58.

[9] Id.

[10] Id.

as characterized by Plaintiff.[12]  The only individual who could be considered to be "staring" down the tier is Ms. Williams, who is no longer a party to this lawsuit.[13]

It is important to also point out the inconsistencies within inmate Briscoe's own evidence regarding the manner in which he came to believe that Sgt. Stewart encouraged the attack by purportedly shouting "They're getting that bitch, inmate Briscoe."   In response to Interrogatories, inmate Briscoe stated that he derived that information from Maj. Craig White during the investigation.[14] However, Mr. White's investigation makes no such finding.[15]   Then, in inmate Briscoe's declaration, which was just recently executed on January 22, 2022, he claimed that he *heard* Sgt. Stewart shout "They're getting that bitch, inmate Briscoe" during the attack.[16]  These statements are in direct conflict with one another - either inmate Briscoe learned about Sgt. Stewart's alleged statement after the attack, or he heard the alleged statement during the attack.  This is but one example of glaring inconsistencies that call into question the veracity of Plaintiff's self-serving discovery responses, sworn declaration, and pleadings contained in the record.

Regarding a request for medical care, throughout this litigation inmate Briscoe has asserted and alleged that subsequent to the incident, *h e  h i m s e l f* tried to obtain medical assistance from Sgt. Stewart but instead she told *h i m* to "take your fucking licks, n***a," even to go so far as to specifically state in responses to Interrogatories that *h e  a p p r o a c h e d* Sgt. Stewart *b y  t h e  w i n d o w* and asked her for

---

[12] Rec. Doc. 55, p. 3-4.

[13] Rec. Doc. 51-10, video placeholder for conventionally filed video, identified as Sgt. Stewart MSJ-Exhibit H and identified by Plaintiff as File20180203053001, at time stamp 5:35:48 to 5:35:58; Rec. Doc. 43, Dismissal of Kendale Williams as a party to this lawsuit for inability to effectuate service.

[14] Rec. Doc. 55-7, p.3-4, response to Interrogatory No. 4.

[15] Rec. Doc. 55-3, Investigation of Maj. White.

[16] Rec. Doc. 55-2, Plaintiff's Declaration, ¶ 12.

assistance.[17]    The video footage plainly shows otherwise, as inmate Briscoe did not approach the

window following the incident during the time-period Sgt. Stewart was in the vicinity, or at anytime

thereafter during the video-footage of the incident.[18]   In an effort to overcome this clear evidence,

inmate Briscoe now asserts, for the first time in his Opposition, that *another inmate* pleaded with the

guards for medical assistance, and that Sgt. Stewart told *him* "take your fucking licks, n***a".[19]   This is

contrary to the numerous statements made by inmate Briscoe throughout this litigation as alleged in his

Complaint (Rec. Doc. 1, ¶¶ 28 and 29), Amended Complaint (Rec. Doc. 13, ¶¶ 28 and 29), and Second

Amended Complaint (Rec. Doc. 33, ¶¶ 25 and 26), and in response several Interrogatories (Rec. Doc.

55-7, Response to Interrogatory Numbers 5, 7, and 8).

Inmate Briscoe's unsuccessfully attempts to discredit Sgt. Stewart and point to purported

inconsistencies in Sgt. Stewart's testimony that are both insignificant and not at all inconsistent,

---

[17] Rec. Doc. 33, Plaintiff's Second Amended Complaint at ¶¶25-26 ("Immediately following the attack, Mr. Briscoe sought the help of Sgt. Stewart, who was the closest officer on duty" at ¶ 25), ("Sgt. Stewart refused to assist Mr. Briscoe despite his obvious injuries, saying 'take your fucking licks n***a' at ¶ 26); Rec. Doc. 55-7, Plaintiff's Exhibit F, Response to Interrogatories, Itr. 5 ("When **Mr. Briscoe sought** the assistance of Sgt. Stewart, she **told him** 'take your fucking licks ni***a' )(emphasis added ), Itr. 7 (**Mr. Briscoe approached Sgt. Stewart by the window** and asked her for assistance.  She responded by saying 'take your fucking licks n***a'' )(emphasis added ), and Itr. 8(. . . when **Mr. Briscoe approached Sgt. Stewart at the window** and asked for assistance, she **told him** . . .)(emphasis added).

[18] Rec. Doc. 51-8, video placeholder for conventionally filed video, identified as Stewart MSJ-Exhibit F and identified by Plaintiff as File20180203053412, time stamp 5:35:58 (conclusion of incident) to end of video at 5:39:12, well after Sgt. Stewart had left the area to retrieve a supervisor to address the fire alarm.

[19] Rec. Doc. 55, p. 3;  Rec. Doc. 55-2, Plaintiff's Exhibit A to Opposition, Declaration of Shawn Briscoe, ¶13 (stating *". . . I and . . . another inmate tried to get assistance from the guards, but was told . . ."*).  Even here inmate Briscoe asserts that he also tried to get assistance from the guards, which is not evidenced in the video.  Notably, in this sworn declaration, inmate Briscoe asserts that he tried to get assistance from unnamed guards (plural), not Sgt. Stewart specifically.  It may be that inmate Briscoe went to the window at some point to request assistance that is not reflected in later video footage; however, this would have occurred *after* Sgt. Stewart had left the area to seek out a supervisor related to the fire alarm.  Thus, there is no evidence that *Sgt. Stewart* was aware of any alleged injuries and refused assistance.

particularly when taken 2 ½ years after the alleged incident as memories begin to fade.[20]  A careful review of the video footage along with the competent testimony and evidence in the record leaves no question that *Sgt. Stewart,* the only Defendant remaining in this lawsuit, is not liable under any theory of law for injuries allegedly sustained as a result of the attack by inmate Harris and/or Plaintiff's later self-imposed injuries.   While Sgt. Stewart would aver that neither she nor any of the initially named Defendants should be liable, if there is liability anywhere to be had it does not lay at the feet of Sgt. Stewart.[21]

## LAW AND ARGUMENT

**I.    Legal Standard: Rule 56.   There is no competent evidence that raises an issue of disputed material facts and Summary Judgement is Proper.**

Sgt. Stewart incorporates by reference the legal standard set forth in her Memorandum in Support of Motion for Summary Judgement, and does not dispute the standard as set forth by Plaintiff in his Opposition.[22]   It is Plaintiff's application of that standard to the facts and evidence in this case that is problematic.  In his Opposition, Plaintiff relies heavily on his uncorroborated self-serving sworn

---

[20] Eg. See Rec. Doc 55, pp. 6-7,Testimony regarding Sgt. Stewart's vision health and whether she was wearing glasses or contact lenses at the time of the event; how far and how much she could see generally down the tier from the relevant vantage point; specifically what she saw the morning of the incident, and specifically what she may have been discussing with her supervisor (though Plaintiff admits in his brief that Sgt. Stewart is turning to her supervisor to "apparently describe events as they unfolded," Rec. Doc. 55, p. 3).

[21] Eg.  It was Kendale Williams (no longer a party to this lawsuit) who allegedly took something of value from another inmate in some purported conspiracy, not Dallas Stewart.  It was Kendale Williams who continually looked down the tier during the incident and immediately afterwards, not Dallas Stewart.  It was Kendale Williams and the shift supervisor, Master Sergeant Williams (never made a party to this lawsuit) who remained in the key area after Dallas Stewart walked away at 5:37:36 a.m.  Dallas Stewart's shift ended at 6:00 a.m.,  and inmate Briscoe did not receive any medical treatment until 8:43 a.m., nearly three hours later, long after her shift had ended.  Hence, if anyone could be liable for inmate Briscoe's alleged injuries (which is at all times denied), it is clearly not Dallas Stewart.  Rather, liability could only lie with Kendale Williams, Master Sergeant Williams, and/or the guards on duty from 6:00 a.m. until 8:43 a.m., when inmate Briscoe received medical attention.

[22] Rec. Doc. 51-2, p. 9; Rec. Doc. 55, p. 4-5.

declaration, pleadings, and responses to discovery; however, the facts asserted therein are in direct conflict with the testimony and evidence in the record, particularly the clear and indisputable video evidence submitted by Plaintiff in discovery and the medical records from three (3) separate providers relating to inmate Briscoe's treatment on February 3, 2018.    Notably, and as specifically set forth above, even facts as asserted in Plaintiff's Opposition in an attempt to create an issue of fact as to whether or not Plaintiff sought out medical assistance from Sgt. Stewart are in direct conflict with the very documents upon which he relies.[23]

With respect to Plaintiff's assertion that Sgt. Stewart has no knowledge of the treatment he received or conversations held with health care providers related to his injuries, direct knowledge is unnecessary where, as here, the documents in the record speak for themselves.[24]    Plaintiff claims that he sustained and received treatment for stab wounds, citing as support his declaration, pleadings in the record, and discovery responses and to an investigative report indicating he had injuries consistent with being "hit with a weapon" and that inmate Harris struck him with a "stabbing motion."[25]    Sgt. Stewart does not dispute that inmate Briscoe may have been hit with a weapon by inmate Harris and that he may have received some injuries.  What she does dispute, and what the evidence reflects, is that inmate Briscoe did not complain to his health care providers on February 3, 2018 that he was suffering injuries from a stab wound, nor that he had even been injured as the result of an alleged attack,  instead reporting that he had accidentally burned himself.[26]    While Plaintiff characterizes any suggestion that

_____

[23] See argument at p. 4-5 above and at fn. 14 herein.

[24] See medical records associated with the incident at issue in this litigation at Rec. Doc. 51-14 (medical records from Acadian Ambulance) Rec. Doc. 51-15 (medical records from Baton Rouge General), and Rec. Doc. 51-16, (medical records from Hunt Correctional Center).

[25] Rec. Doc. 55, p. 6; Rec. Doc. 55-2, Plaintiff's Declaration, ¶¶Rec. Doc. 55-3, Exhibit B to Plaintiff's Opposition, Investigative Report by Major Craig White.

[26] Rec. Doc. 51-14, p. 2, Acadian Ambulance ("Complaint: Burns to left shoulder.  History of Present Illness: PT was heating up noodles in the microwave and burn himself with the hot liquid when

Plaintiff sustained his burn injuries accidentally as "absurd," the fact that Plaintiff told *all three* health care providers that the accidental spill was the cause of his injuries lends credence to the argument that inmate Briscoe's burn injuries - in whole or in part - were the result of hot soup he spilled on himself as opposed to an attack.  This further lends credence to the argument that any stab wounds (if any existed) were simply not severe enough for him to seek out treatment and/or significant enough to be noticed by three different examining health care providers (ambulance personnel, doctor(s) at Baton Rouge general, and medical staff at Hunt Correctional Center).  Furthermore, while it may be fathomable that a medical provider could have neglected to make notes of stab wounds or of any additional discussions as to the cause of Plaintiff's injuries, it is illogical that all three providers forgot to include in the record any contrary explanations discussed as to the source of his injuries, any report of stab wounds, any findings of stab wounds during the examination, and/or any  treatment rendered for any stab wounds.

Where, as here, a party's self-serving and unsupported statements are contrary to the competent evidence in the record, such cannot be used as evidence to defeat summary judgment.[27]    Due to the numerous conflicts among  Plaintiff's pleadings, responses in Interrogatories,  Declaration, and facts

---

the cup collapsed and in surprise threw it upward burning his left shoulder");Rec. Doc. 51-15, p.3, Baton Rouge General ("34-year-old African American presents complaining of scald burns to left face, neck, and upper shoulder and back that occurred at approximately 9:00.  Pt states he removed a bowl of noodles from the microwave and spilled the boiling water onto himself.  He had sensation and described pain 7.5/10 upon arrival"); Rec, Doc. 51-16, Elyan Hunt Correctional Center, p. 2-3 ("34 yr old male with 2nd degree burn to left shoulder, neck top, L chest top, L shoulder.  Had soup spilled on him while sitting.  Goal of referral: treat & evaluate 2nd degree burns."  See also diagram at p. 3).

[27] *LegacyRG, Incorporated v. Harter,* 705 Fed.Appx. 223,230 (5th Cir. 2017); citing *Chambers v. Sears Roebuck and Co.*, 428 Fed.Appx. 428 Fed.Appx. 400, 408 (5th Cir. 2011), citing *In re Hinsley*, 201 F.3d 638, 643 (5th Cir.2000) ("A party's self-serving and unsupported claim that she lacked the requisite intent is not sufficient to defeat summary judgment where the evidence otherwise supports a finding of fraud.").

set forth in the Opposition, it is clear that Plaintiff's self-serving statements are not credible and should not be considered as competent evidence that could create a material issue of fact.

## II.    Legal Analysis and Argument

### A.    No evidence to support Plaintiff's § 1983 Claim for Failure to Protect

In the interest of judicial efficiency and to avoid unnecessary duplication Sgt. Stewart incorporates by reference the facts and arguments set forth in her Memorandum in Support of Motion for Summary Judgement.[28]  In further response, with respect to Plaintiff's argument that inmate Briscoe and Sgt. Stewart "knew each other" and had interacted with each other several times, he presents no corroborating evidence in support of his allegation outside of his self-serving statements. First, the glaring inconsistencies as described above significantly undercuts Plaintiff's credibility and his statements should not even be considered as evidence of a disputed fact.[29]  Secondly, Plaintiff submits no context as to how the parties knew each other, when they purportedly met, how long they had known each other, why Sgt. Stewart may have had something against inmate Briscoe, or any other detail that could lend some support for his contention.[30]  It is undisputed that inmate Briscoe and inmate Harris were not on each other's enemy list, there is no competent evidence that inmate Harris was a known threat to inmate Briscoe, and there is no competent evidence to show that Sgt. Stewart threatened inmate Briscoe.[31]  Notwithstanding, even if we were to take inmate Briscoe's statement that he and Sgt. Stewart knew each other prior to the incident as true, as set forth herein and in her initial Memorandum, the video evidence plainly shows that Sgt. Stewart did not see the altercation, she did not encourage the attack, and she was the first employee to walk away from the area leaving the other two employees to

---

[28] Rec. Doc. 51-2, pp. 1-8 and 9-11.

[29] See facts set forth above, *in toto*.

[30] *Id.*  See also Rec. Doc. 33 (Second Amended Complaint) and Rec. Doc. 55 (Opposition).

[31] See facts set forth above, *in toto*.

remain.[32]  It would be unreasonable for a fact-finder to determine that Sgt. Stewart threatened inmate Briscoe under these facts and with the competent evidence in the record.

With respect to Plaintiff's claim that he was denied medical treatment, as more specifically set forth above, in the face of incontrovertible evidence that inmate Briscoe *did not* request assistance from Sgt. Stewart as alleged, Plaintiff has shifted his argument within his Opposition to now claim that it was someone else who requested help on his behalf.  This is in direct conflict with numerous statements throughout this litigation that *he* approached Sgt. Stewart for assistance.  This ever-changing allegation is not competent evidence that Sgt. Stewart was deliberately indifferent to Plaintiff's medical needs.  Furthermore, particularly with the contradictory statements as set forth herein, there is nothing in the record to support inmate Briscoe's outrageous contention that she told him, or anyone, to "take your fucking licks, n***a."[33]  Based on the information contained herein and in Sgt. Stewart's initial Memorandum, Plaintiff's Eighth Amendment claims must fail and should be dismissed as a matter of law.

**B.    No evidence to support Plaintiff's Claims of Conspiracy.**

In the interest of judicial efficiency and to avoid unnecessary duplication Sgt. Stewart incorporates by reference the facts and arguments set forth in her Memorandum in Support of Motion for Summary Judgement and those facts and arguments set forth hereinabove.[34]  In further response, to assume that whatever Ms. Williams received from an inmate, whether from inmate Tremaine who goes by the nickname "Poo"or any other inmate,  and put in her pocket was in any way related to the incident that occurred between inmate Harris and inmate Briscoe is much too great a leap.  To then assume Sgt. Stewart was somehow involved in this purported "transaction" simply because she walked

---

[32] *Id.*

[33] See argument at p. 4-5 above and at fn. 14 herein.

[34] Rec. Doc. 51-2, pp. 1-8 and 9-11; See also facts and arguments set forth herein at pages 1- 10.

to the door of the tier upon hearing a commotion is even further attenuated and is implausible. Accordingly, the allegation that Sgt. Stewart engaged in a conspiracy related to the incident is wholly based on presumption with no basis in fact and with no competent evidence in the record to even remotely support such claim. Therefore, summary judgement should be granted as to this issue and all claims of conspiracy dismissed as a matter of law. Sgt. Stewart would further aver that this attenuated presumption, with no supporting evidence, is completely frivolous.

**C.    Plaintiff's alleged injuries were not the result of any negligent acts or omissions by Dallas Stewart.**

In the interest of judicial efficiency and to avoid unnecessary duplication Sgt. Stewart incorporates by reference the facts and arguments set forth in her Memorandum in Support of Motion for Summary Judgement and those facts and arguments set forth hereinabove.[35]  In further response, for the reasons stated in response to Plaintiff's §1983 claim for failure to protect and Plaintiff's claims of conspiracy, there is no reliable evidence in the record that Sgt. Stewart any reason to anticipate that an attack was going to occur, nor that she failed to take reasonable care to prevent the attack. As set forth above, by the time Sgt. Stewart got to the window at 5:35:55, the actual "attack" (i.e., when inmate Harris poured liquid onto inmate Briscoe and struck in him a stabbing motion) was over. Plaintiff submits a still photograph in his Opposition brief of a single moment - one second - at time-stamp 5:35:56 in an effort to somehow show that Sgt. Stewart should or even could have stopped the attack.[36] Looking to the video in motion it is plain that while inmate Harris attempts to pursue inmate Briscoe as he jumps away starting at time-stamp 5:35:50, at 5:35:56 inmate Harris is starting to turn away and

---

[35] Rec. Doc. 51-2, pp. 1-8 and 9-11; See also facts and arguments set forth herein at pages 1- 11.

[36]  Rec. Doc. 55, p. 12 (still picture of videos at time-stamp 5:35:56).

in fact walks away at time-stamp 5:35:58.   Therefore, it cannot be disputed that there is nothing Sgt. Stewart should or could have done to prevent the attack.

With respect to the duty to see that medical care is provided where a need is indicated by a person's physical or mental condition, there is no evidence to support that Sgt. Stewart breached such duty.  While it is not disputed that Sgt. Stewart did not make a round subsequent to the incident, based on a totality of the video evidence showing the incident and Sgt. Stewart's contemporaneous actions, coupled with the contradictory statements contained in inmate Briscoe's declaration, record pleadings, and Opposition brief regarding  whether or not he (and/or anyone one his behalf) sought out medical assistance from Sgt. Stewart, there is no evidence that Sgt. Stewart would have discovered a need for medical attention had she conducted a round.  Importantly, Sgt. Stewart's shift was ending at 6:00 a.m., and the log-book shows that a rounds were made by the  incoming staff at 6:20 a.m., 7:05 a.m., 8:10 a.m., and 8:30 a.m., all of which found the area secure and none of which discovered any need to obtain medical assistance for inmate Briscoe or any other inmate.[37]  Based on these facts and evidence, it is absurd to assume that had Sgt. Stewart conducted a round following the incident, she would have been alerted to inmate Briscoe's alleged need for medical attention when the next shift made four (4) rounds without being so alerted.[38]  It is difficult to fathom why Plaintiff claims Sgt. Stewart's negligence caused inmate Briscoe to wait nearly three (3) hours after the incident before receiving medical attention, when more than 2 ½ of those hours were on someone else's shift who actually did make rounds and discovered no issues.[39]

---

[37] Rec. Doc. 51-14, relevant portion of log.

[38] *Id.*

[39]

-12-

**D.      No evidence to support Plaintiff's Claim for Failure to Intervene**.

In the interest of judicial efficiency and to avoid unnecessary duplication, Sgt. Stewart incorporates by reference the detailed facts and arguments set forth in her original Memorandum in Support of Motion for Summary Judgement and hereinabove.[40]    In further response, Plaintiff misinterprets Col. White's testimony.  Specifically, Col. White testified as follows:

Q.     Okay.  So based – based on your investigation, I'll pull your report just in case that's helpful to you at all – based on your investigation, did you determine that – Dallas Stewart saw Shawn Briscoe get attacked:

A.     No, sir.

Q.     What – what – what did you determine or what did you determine she – she saw through that window?

A.     Well, I – I couldn't determine what she saw.  I believe that she should have saw the – lockers – I mean the bed slid out and should have at least, you know, made a round and investigated.[41]

Making a round would not have prevented the attack, and there is no evidence it would have resulted in Sgt. Stewart discovering that inmate Briscoe was in need of medical attention (if in fact he was in need of medical attention).  With respect to the EHCC's denial of inmate Briscoe's ARP, his request was not denied solely because Sgt. Stewart could not be interviewed.  Rather, EHCC had access to the entire record, including information regarding disciplinary action against Sgt. Stewart.[42] After fully investigating the matter the EHCC found no evidence or witnesses to support inmate Briscoe's allegation that the guards watched as he was attacked, and the EHCC further noted that inmate Briscoe

---

[40] Rec. Doc. 51-2, pp. 1-8 and 9-11; See also facts and arguments set forth herein at pages 1- 12.

[41] Rec. Doc. 55-4, Declaration of Maj. White, pp. 38, ll. 13-25 - 39, ll. 1-2.

[42] Rec. Doc. 51-18, Exhibit P to Stewart's Motion for Summary Judgement, Administrative Remedy Procedure (ARP) filed by Shawn Briscoe and related findings.

had access to health care services through sick call 24 hours a day, 7 days a week and he had every opportunity to use that procedure.[43]

    **F.**    **No violation of the Louisiana Constitution Article I, Sec. 20.**

In the interest of judicial efficiency and to avoid unnecessary duplication, Sgt. Stewart incorporates by reference the detailed facts and arguments set forth in her original Memorandum in Support of Motion for Summary Judgement and hereinabove[44] to address Plaintiff's broad assertion that Sgt. Stewart's alleged actions and omissions interfered with Plaintiff's right to be free from cruel and unusual punishment guaranteed by Louisiana's Constitution, Art. 1, Sec. 20.

<u>**CONCLUSION**</u>

As specifically set forth in Sgt. Stewart's Memorandum in Support of Motion for Summary Judgement, Statement of Undisputed Facts, and in Reply to Plaintiff's Opposition and to Plaintiff's Response to Statement of Undisputed Facts, the evidence in the record shows that Sgt. Stewart was in no way culpable for the injuries allegedly sustained by inmate Briscoe, there was nothing she could or should have done to prevent the altercation, and she did not know nor is there any evidence that she should have known that inmate Briscoe was allegedly in need of medical treatment during her shift. Because there is no competent evidence in the record upon which a reasonable fact finder could rely to determine that Sgt. Stewart is liable to Plaintiff under any theory of law alleged, Sgt. Stewart is entitled to summary judgment as a matter of law and all claims should be dismissed at Plaintiff's cost.

---

[43] Rec. Doc. 51-18, p. 3.

[44] Rec. Doc. 51-2, pp. 1-8 and 9-11; See also facts and arguments set forth herein at pages 1- 13.

**Respectfully submitted,** this the 9th day of March, 2022

> **JEFF LANDRY**
> **ATTORNEY GENERAL FOR**
> **THE STATE OF LOUISIANA**

**BY:**   */s/ Melissa S. Losch*_____
>         **ALEJANDRO "AL" PERKINS (#30288)**
>         **Email: aperkins@hamsil.com**
>         **MELISSA S. LOSCH, T.A. (#26811)**
>         **Email: mloschl@hamsil.com**
>         **JOHN R. BLANCHARD (#37036)**
>         **Email: jblanchard@hamsil.com**
>         **SPECIAL ASSISTANT ATTORNEY GENERAL**
>         **HAMMONDS, SILLS, ADKINS AND GUICE**
>         2431 S. Acadian Thruway, Suite 600
>         Baton Rouge, Louisiana 70808
>         Telephone (225) 923-3462
>         Facsimile   (225) 923-0315

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that, on the date stated below, a true and correct copy of the above and foregoing **MEMORANDUM** was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to counsel of record by operation of the court's electronic filing system.

**BATON ROUGE, LOUISIANA,** this 9th day of March, 2022

 *s/ Melissa S. Losch*
MELISSA S. LOSCH

-16-