UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SHAWN BRISCOE, | * | |
| *Plaintiff* | * | Civil Action No. 19-00029 |
| | * | |
| v. | * | JUDGE SHELLY D. DICK |
| | * | |
| JAMES LeBLANC, TIMOTHY | * | MAGISTRATE JUDGE |
| HOOPER, DALLAS STEWART, | * | ERIN WILDER-DOOMS |
| AND KENDALE WILLIAMS | * | |
| *Defendants* | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

There is no evidence in the record to support any of the allegations contained in Plaintiff, Shawn Briscoe's ("Inmate Briscoe") Complaint (as amended at Record Document 33). Specifically – there is (1) no evidence of 42 U.S.C. § 1983 violation for Failure to Protect pursuant to the Eighth Amendment; (2) no evidence of conspiracy of any sort between Defendant, Dallas Stewart ("Sgt. Stewart"), and any other person to cause the alleged attack upon Plaintiff, (3) no evidence that the injuries alleged to have been sustained by Mr. Briscoe were caused by the alleged attack, (4) no evidence that Sgt. Stewart was negligent with respect to Plaintiff, (5) no evidence that Sgt. Stewart failed to intervene in the alleged attack against Plaintiff by another inmate, and (6) no evidence that Plaintiff was subjected to cruel and unusual punishment in violation of the Louisiana Constitution Article I, Sec. 20. Therefore, for the reasons more fully detailed below, Sgt. Stewart is entitled to summary judgment as a matter of law and Plaintiff's claims should be dismissed as frivolous, at his cost.

## PROCEDURAL POSTURE

Plaintiff initiated this lawsuit on January 15, 2019 against James Leblanc, Secretary for the Louisiana Department of Public Safety and Corrections, Timothy Hooper, warden of the Elayn Hunt Correctional Center (EHCC), Dallas Stewart, former officer of EHCC, and a second unidentified Doe

Defendant.[1]  Plaintiff alleged in the complaint that two (2) officers on duty conspired and/or set up Plaintiff to be attacked by another inmate.  Plaintiff further claims that said officers stood by and watched the alleged attack without intervening, encouraged the alleged attack, and refused to obtain medical treatment for alleged burns and stab wounds resulting from the alleged attack.[2]  Plaintiff claims that Defendants failed to protect him in violation of the Eighth Amendment pursuant to 42 U.S.C. § 1983,[3]  there was an assault and battery upon him for which Defendants are liable, *in solido*, in accordance with La. Civil Code art. 2324(A),[4]  that Defendants were negligent pursuant to State law,[5] that Defendants failed to intervene as required by law,[6] that Defendants engaged in civil conspiracy pursuant 42 U.S.C. § 1983,[7] and that Defendants interfered with Plaintiff's right to be free from cruel and unusual punishment pursuant to the Louisiana Constitution, Article I, § 20.[8]  Plaintiff further raised claims of *Respondeat Superior* against James LeBlanc and Timothy Hooper,[9] and a claim for indemnity against James LeBlanc.[10]   On April 17, 2019, Plaintiff filed an Amended Complaint to identify Doe Defendant as Kendale Williams.[11]

---

[1] Record Document 1, Complaint, p. 3, ¶¶ 14-18.

[2] Rec. Doc. 1, pp. 1-2, ¶¶ 1-7.

[3] Rec. Doc. 1, pp. 7-9, ¶¶ 57-67.

[4] Rec. Doc. 1, pp. 9-1, ¶¶ 68-71.

[5] Rec. Doc. 1, p. 10, ¶¶ 72-77.

[6] Rec. Doc. 1, pp. 10-11, ¶¶ 78-81.

[7] Rec. Doc. 1, p. 11, ¶¶ 82-85.

[8] Rec. Doc. 1, p. 11, ¶ 86.

[9] Rec. Doc. 1, pp. 11-12, ¶¶ 87-89.

[10] Rec. Doc. 1, p. 12, ¶¶ 90-93.

[11] Record Document 13, Amended Complaint.

Upon consent motion, this Court dismissed Defendants Timothy Hooper and James LeBlanc, leaving Dallas Stewart and Kendale Williams remaining as defendants in their individual capacities only.[12]  Initially, Plaintiff alleged that there was video surveillance of Dallas Stewart taking an item from another inmate and placing it in her pocket, presumably as evidence that Sgt. Stewart took something of value as part of a conspiracy for the alleged attack.[13] However, upon discovering that the individual in the surveillance video was actually Kendale Williams and not Dallas Stewart, Plaintiff filed his Second Amended Complaint on September 27, 2019 to correct the error.[14]  Plaintiff also removed those claims and allegations filed solely against James LeBlanc and Timothy Hooper as a result of their dismissal in the instant litigation.[15]  After being unable to effectuate service upon Kendale Williams, Ms. Williams was dismissed as a Defendant, leaving Dallas Stewart as the only defendant remaining in this action.[16]

The parties have completed all written discovery and all depositions have been conducted.  The record evidence plainly shows that Sgt. Stewart cannot be deemed liable to Plaintiff under any theory of state or federal law and there is no testimony that could be elicited from Plaintiff that could raise a genuine issue of material fact.

## **FACTS**

Defendant, Dallas Stewart, accepted a probationary appointment as a cadet with the Elayn Hunt Correctional Center (EHCC) on August 3, 3016.[17]  Upon satisfactory conclusion of the probationary

---

[12] Record Document 24, Order dismissing Defendants James LeBlanc and Timothy Hooper.

[13] Rec. Doc. 13, p. 6, ¶¶ 2 36-39; pp. 9-10, ¶¶ 68-71; p. 11, ¶¶ 82-85.

[14] Record Document 33, Second Amended Complaint, pp. 5-6, ¶¶ 2 33-36; p. 9, ¶¶ 58-61; pp. 10-11, ¶¶ 72-75.

[15] Rec. Doc. 33, *in globo.*

[16] Record Document 43, Order granting dismissal of Kendale Williams.

[17] Exhibit A, Acceptance of Probationary Appointment dated August 3, 2016.

term, Dallas Stewart attained permanent status with EHCC on August 14, 2017,[18] and rose to the level of Sergeant on February 15, 2017.[19] At all times relevant to the instant action, Shawn Briscoe was an inmate at EHCC housed in the Fox 7 dormitory.[20] Sgt. Stewart was assigned to Fox 7 dormitory as one of the guards on the twelve (12) hour shift beginning at 6:00 p.m. on February 2, 2018 and ending at 6:00 a.m. on February 3, 2018.[21] Just before shift change, at approximately 5:35:48 a.m., there was an altercation between inmate Briscoe and another inmate, Darryl Harris ("inmate Harris"). Video footage shows inmate Harris throwing a liquid substance onto inmate Briscoe and striking inmate Briscoe several times, inmate Briscoe jumping onto the beds causing some beds to shift, and then inmate Harris walking away.[22] The entire incident lasted ten (10) seconds, with inmate Harris beginning to walk away at 5:35:58.[23] Subsequent to the altercation, the video footage shows inmate Briscoe remove his shirt, dry himself off, straighten out his bed, put on shoes and/or socks, retrieve another shirt from his locker and put it on, and walk around the bed apparently drying it off as well.[24] Inmate Briscoe appears calm and in no distress during the remaining video footage and the video footage immediately following the attack shows no attempt by Inmate Briscoe to approach the guards to seek medical attention or for any purpose.[25]

---

[18] Exhibit B, Successful Completion of Probationary Appointment effective August 14, 2017.

[19] Exhibit C, Employee Notification Form.

[20] *See* Rec. Doc. 33, ¶ 1.

[21] Exhibit D, Excerpts of Deposition Transcript of Dallas Stewart (Stewart Depo.), p. 38, ll. 2-25 - p. 39, ll. 1-2.

[22] Exhibit E, Incident Report; Exhibit F, video footage of incident between inmate Briscoe and inmate Harris (identified by Plaintiff as File20180203053412), time stamp of entire-incident from 5:35:48 a.m. to 5:35:58 a.m.

[23] Exh. F, at time stamp 5:35:48 - 5:35:58.

[24] Exh. F, at time stamp 5:35:59 -5:39:12 (end of footage).

[25] *Id.*

In fact, Plaintiff admits he did not realize he had been stabbed or that he was bleeding until 30-40 minutes *after* the attack, between 6:05:58 and 6:15:58.[26] Shift change was scheduled for 6:00 a.m., and record evidence shows that Ms. Stewart and Ms. Williams were relieved from duty at precisely 6:12 a.m, near the time (or possible after) Mr. Briscoe himself realized the extent of the alleged injuries.[27] While Mr. Briscoe alleges that he walked up to the door on the tier to inform Ms. Stewart that he was in need of medical attention, he testified that he did not seek medical attention until 2-3 hours *after* the incident.[28] Then, when Mr. Briscoe realized his time frame clearly placed Ms. Stewart off duty, he changed the story to asserting he walked up "right" after the attack, described as 30-40 minutes later, which was still near or after the shift change.[29] Interestingly, Mr. Briscoe could not be certain whether Ms. Stewart was the guard on duty when he allegedly walked up to the door to seek medical attention.[30]

Meanwhile, Dallas Stewart (Defendant), Kendale Williams (dismissed as a defendant for failure to effectuate service), and Master Sergeant Williams (shift supervisor who was not made a party to this lawsuit), were in and around what is termed the "key area" on Fox 7 dormitory.[31] The video footage relied on by Plaintiff begins at 5:30 a.m., which begins with Kendale Williams and Master Sergeant Williams sitting at a table in the key area, and Sgt. Stewart entering the area at 5:31:58.[32] During her deposition testimony, Sgt. Stewart identified herself as the individual with red hair.[33] According to the

---

[26] Exh. Q, Excerpts of Deposition Transcript of Shawn Briscoe (Briscoe Depo.)., pp. 39 ll. 24-25 - 41, ll. 1-7.

[27] *Id.*

[28] Exh. Q, Briscoe Depo., pp. 42 ll. 12-25 - 43, ll. 1-10.

[29] Exh. Q, Briscoe Depo., pp. 43 ll. 19-25 - 45, ll. 1.

[30] Exh. Q, Briscoe Depo., p. 45 2-19 (responding "I think so" when asked if Ms. Stewart was still on duty).

[31] Exh. D, Stewart depo., pp. 126, ll. 4-25 - 127, ll. 1-14.; Exhibit G, diagram of Fox 7 dormitory. Note that inmate Briscoe and inmate Harris were assigned to D-section (See: Exh. 3, Incident Report).

[32] Exhibit H, video footage of guards before, during, and immediately following the altercation between inmate Briscoe and inmate Harris(identified by Plaintiff as File20180203053001).

[33] Exh. D, Stewart depo., p. 127, ll. 15-18.

video time-stamp, Sgt. Stewart stands up and walks to the window overlooking D-Section at 5:35:53, the precise time at which inmate Briscoe had jumped over the beds causing them to move and shift.[34] The video-footage directly reflects Sgt. Stewart's unwavering account that she heard a commotion sounding like lockers and beds moving around which prompted her to go to the window.[35]  The video footage clearly shows that between the time Sgt. Stewart reached the window at 5:35:55 and the time she walked away from the area at 5:37:26, she looked away several times, talking with the shift supervisor and obviously keeping the shift supervisor abreast of what she could see and hear on the tier.[36] Notably, the only individual who continually looked down the tier without interruption is Kendale Williams, the individual who is no longer a party to the lawsuit due to an inability to locate her and effectuate service of process, and it was she who remained at the window by herself until she stepped away at 5:38:27.[37]  During the same time period the fire alarm went off, and to Sgt. Stewart's best recollection, when she walked away at 5:37:26, it was to get her supervisor so that he could address the fire alarm issue.[38]  All of this transpired nearing the end of Sgt. Stewart's shift at 6:00 a.m.[39]  The log book contemporaneously maintained shows the fire alarm went off at 5:35 a.m. and was reset at 5:53 a.m., after Sgt. Stewart went to alert her supervisor that he needed to address the alarm, supporting Sgt. Stewart's testimony.[40]

---

[34] See Exh. F at time-stamp 5:35:53 and Exh. H at time-stamp 5:35:53

[35] Exh. D, Stewart depo., pp. 83, ll. 2-25 - 84, ll. 1-23;

[36] Exh. H at time-stamp 5:35:51 - 5:37:33; Exh. D, Stewart depo.,  pp. 40, ll. 4-25; pp. 92, ll. 19-25 - 96, ll. 1-21; pp. 128, ll. 8-25 - 133, ll. 1-18.

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] Exhibit I, relevant page from Kendale Williams' log-book.

It was not until 8:43 a.m., nearly three (3) hours *after* Sgt. Stewart's shift ended, that the evidence shows inmate Briscoe indicating to anyone that he was in need of medical attention, at which time the guard on duty, Sergeant Angela Honora ("Sgt. Honora") notified then Major Craig White (now Colonel, "Col. White"), who obtained medical care for inmate Briscoe and conducted an investigation.[41] Video footage at that time shows inmate Briscoe apparently spilling something on himself near the microwave, then pulling off his shirt and writhing around in apparent pain and distress.[42] When asked why he waited so long, Mr. Briscoe testified that he was more concerned about his "vendetta" against the inmate who attacked him than his own health.[43] Once alerted, Mr. Briscoe was picked up by Acadian Ambulance, who were informed he burned himself while heating up noodles in the microwave. The records reflect no mention of having been purportedly stabbed.[44] Upon arriving at Baton Rouge General, Mr. Briscoe asserted that his burns were caused accidentally when he removed a bowl of noodles from the microwave and spilled boiling water on himself at approximately 9:00 a.m. that morning, making no mention of having been purportedly attacked and/or stabbed.[45] Mr. Briscoe testified that the doctor at Baton Rouge General inquired about "tiny, little bitty hole things," with

---

[41] Exh. E, Incident Report.

[42] Exhibit J, video footage of inmate Briscoe spilling hot liquid on himself and seeking out medical attention at time-stamp 8:40:33 a.m. - 8:45:18 a.m. (identified by Plaintiff as File20180203083916); Exhibit K, video footage of inmate Briscoe running out of the tier to obtain medical attention at time stamp 8:45:11 a.m. - 8:45:18 a.m. (identified by Plaintiff as File20180203084458.

[43] Exh. Q, Briscoe Depo., pp. 54 ll. 12-25 - 56, ll. 1-10; pp. 58, ll. 8-24 - 60, ll. 1-5.

[44] Exhibit L, relevant portion of Acadian Ambulance Records, confidential information redacted.

[45] Exhibit M, relevant portion of Baton Rouge General records, confidential information redacted; Exhibit N, records from EHCC treatment center, confidential information redacted.

Inmate Briscoe only responding that he did not know what happened.[46]  Inmate Briscoe could not recall being treated for stab wounds, and the records reflect no such treatment.[47]

And yet again, records from the EHCC skilled nursing unit indicate that inmate Briscoe spilled water from the microwave, not that his injury was caused by an altercation with another inmate, and make no mention  of or render any care for cuts or an wounds that could have been the result of being stabbed.[48]  While Plaintiff claims that he was initially untruthful in an effort to conceal the aggravated fight and obtain medical attention, even if that is true, there is no competent evidence whatsoever that Mr. Briscoe alerted anyone prior to 8:45 a.m. that he was in need of medical attention, long after Sgt. Stewart's shift had ended at 6:12 a.m.  It belies common sense that Mr. Briscoe would have sustained serious burns at 5:35 a.m., and then not inform anyone of such until 8:45 a.m., particularly with the new guards on duty having made rounds and found everything secure at 6:20 a.m., 7:05 a.m., 8:10 a.m., and 8:31 a.m.[49]

Plaintiff's reliance on the fact that Sgt. Stewart was terminated following the incident is misguided.  It is true that after speaking with Plaintiff and reviewing additional video footage that Col. White believed an altercation occurred at 5:35 a.m. and that, in his opinion, Sgt. Stewart should have investigated when she heard a commotion.  However, Col. White was perfectly clear in his testimony that the investigation did not reveal that Sgt. Stewart witnessed the altercation.[50]  When pressed about why Sgt. Stewart's inaction was serious enough to warrant termination, Col. White testified that the issue was not that the commotion itself was a breach of security but, rather, the concern was what *could* have

---

[46] Exh. Q, Briscoe Depo., pp. 69, ll. 8-25 - 71, ll. 1-23.

[47] Exh. Q, Briscoe Depo., pp. 72, ll. 8-25 - 73, l. 1; pp. 75, ll. 17-25 - 76, ll. 1-2.; Exh. M, Records from Baton Rouge General.

[48] Exh. N, EHCC treatment records.

[49] See Exh. I, entries by Stg. Honora subsequent to 6:12 a.m; Exh. Q, Briscoe Depo., pp. 76, ll. 3-25 - 77, ll. 1-20.

[50] Exhibit O, Deposition Excerpt of Lt. Colonel Craig White, pp. 38, ll. 1-25 - 39, ll. 1-16.

happened after the initial altercation if things would have escalated.[51]  There is no evidence in the record that would support finding Sgt. Stewart culpable for inmate Briscoe's injuries under any theory of law and this matter should be dismissed in its entirety.

## LAW AND ARGUMENT

### I.    Legal Standard: Rule 12(b)(6) and Rule 56

A motion for summary judgment should be granted "[i]f the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact then the moving party is entitled to judgment as a matter of law."[52]  As the United States Supreme Court stated in *Celotex Corporation v. Catrett*: "[t]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery upon motion, against a party who fails to make a showing sufficient to establish the existence of elements essential to the party's case in which the party will bear the burden of proof at trial."[53]  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[54]  A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[55]  Here, and for the reasons more specifically set forth below, there are no genuine issues of material fact that would, if determined to be true, entitle the Plaintiff to relief.  Thus, this matter should be dismissed as a matter of law.

---

[51] Exh. O, Col. White depo., pp. 49, ll. 23-25 - 52, ll. 1-21.

[52] Federal Rules of Civil Procedure 56(C).

[53] *Celotex Corporation v. Catrett*, 477 U.S. 317 (1986).

[54] *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir.2012) (quoting FED. R. CIV. PRO. 56(a)).

[55] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## II.    Legal Analysis and Argument

### A.    Failure to State a Cognizable § 1983 Claim for Failure to Protect

In order to state a cognizable claim under § 1983 for failure to protect, a plaintiff must allege facts which, if true, demonstrate actions that were deliberately indifferent to a substantial risk of harm. As articulated by the Fifth Circuit:

> Prison officials have a duty under the Eighth Amendment to protect inmates from violence at the hands of other prisoners. However, not every injury by one prisoner at the hands of another . . .  translates into constitutional liability for prison officials responsible for the victim's safety. To establish a failure-to-protect claim, [plaintiff] must show that she was detained under conditions posing a substantial risk of serious harm and that [the defendants] were deliberately indifferent to [her] need for protection. In order to act with deliberate indifference, the [defendants] must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference.[56]

Further, "[i]n order to show that prison officials were deliberately indifferent to his safety, a plaintiff must show that those officials were aware that the offending co-inmate posed a specific threat to the plaintiff and that those officials consciously disregarded that known threat."[57] "The deliberate indifference standard sets a very high bar, and a claim of mere negligence in failing to protect an inmate from harm is not actionable under § 1983."[58]

In *Robertson v. LeBlanc*, a plaintiff was housed next to a co-inmate who bragged about killing another co-inmate more than twenty (20) years prior and that plaintiff was injured by that co-inmate in a fight.[59] That plaintiff's failure to protect claim was dismissed, with prejudice, and that court explained that the plaintiff made "no allegation that any defendant was personally aware of a serious threat of

---

[56] *Hill v. Thomas*, 326 Fed. Appx. 736, 737 (5th Cir. 2009) (unpublished) (alterations in original) (citations and quotations omitted).

[57] *Robertson v. Gautreaux*, 2017 WL 690542, at *4 (M.D. La. Feb. 21, 2017).

[58] *Id.* (citing *Robertson v. LeBlanc*, 2014 WL 688979, at *4 (M.D. La. Feb. 20, 2014) (citing *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986))).

[59] 2014 WL 688979, at *4-5 (M.D. La. Feb. 20, 2014).

potential harm to the plaintiff from the offending co-inmate."[60]  That court noted that " '[p]risons are necessarily-dangerous places,' which 'house society's most antisocial and violent people in close proximity with one another,' thereby making it inevitable that 'some level of brutality ... among prisoners' may occur."[61]

Here, Col. White specifically testified that inmate Briscoe and inmate Harris were not on each other's enemy list, nor was he aware of any prior issues between the two.[62]  Sgt. Stewart testified that she only knew of inmate Briscoe and inmate Harris from their names being on the bed book, but she had not interacted with either inmate and had no reason to believe there may be a problem between them.[63]  Thus, there was no evidence of anything that could have alerted Sgt. Stewart there was any risk of harm, much less a substantial risk of harm.  With respect to Plaintiff's claim that he was denied medical treatment, as more specifically set forth above, the record is devoid of any evidence that Plaintiff informed Sgt. Stewart, or any other guard for that matter, of a need for medical attention until 8:45 a.m., *after* Sgt. Stewart was off duty.  The video footage immediately following the alleged attack clearly shows Plaintiff made no attempt to inform Sgt. Stewart that he had been attacked and/or that he was in need of medical care.  Thus, Plaintiff's Eighth Amendment claims must fail and should be dismissed as a matter of law.

---

[60] *Id.* at *5.

[61] *Id.* (citing *Farmer*, 511 U.S. at 858-59 (Thomas, J., concurring); *Verrette v. Major*, 2011 WL 3269319, *2 (W .D.La. July 29, 2011)).

[62] Exh. O, Col. White depo., pp. 53, ll. 6-25 - 54, ll. 1-5.

[63] Exh. D, Stewart depo., pp. 73, ll. 21-25 - 76, ll. 1-4.

**B.      Failure to State a Cognizable Claim of Conspiracy**

1.      No evidence of "Conspiracy" pursuant to La. Civil Code art. 2324(A) that would render Sgt. Stewart answerable, in solido, for any damages Plaintiff alleges he sustained.

The Plaintiff makes a completely conclusory allegation that Sgt. Stewart and Cadet Williams conspired with another inmate to enable Inmate Harris to allegedly assault and batter Mr. Briscoe without any evidence whatsoever in support of such allegation.[64]  The only "evidence" presented by Mr. Briscoe is a point in the video footage where Cadet Williams, *not* Sgt. Stewart, appears to take something from an inmate housed in a different section of the Fox 7 dormitory and place it in her pocket.[65]  Any inference that whatever may have been given to Cadet Williams (if anything) was tied to the altercation between Inmate Briscoe and Inmate Harris and somehow involved Sgt. Stewart is simply absurd and there is no evidence in the record upon which a reasonable fact finder could rely to find a conspiracy that would render Sgt. Stewart liable, *in solido*, for assault and battery pursuant to La. Civil Code Art. 2324(A).

2.      Failure to State an Actionable § 1983 claim for Conspiracy

In order for a plaintiff "[t]o establish a cause of action based on conspiracy a plaintiff must show that the defendants agreed to commit an illegal act."[66]  "[M]ore than a blanket of accusation is necessary to support a § 1983 claim."[67]  In *Valencia v. Lorimier*, a plaintiff alleged that several defendants conspired to allow other inmates to attack him.[68]  However, that plaintiff "only offered his subjective belief that

---

[64] Rec. Doc. 33, p. 9, ¶¶ 58-61

[65] Exh. H at time-stamp 5:33:13 - 5:33:52.

[66] *Hall v. Armond*, 2014 WL 2465932, at *4 (M.D. La. May 30, 2014) (citing *Arseneaux v. Roberts*, 726 F.2d 1022 (5th Cir.1982)).

[67] *Id.* (citing *Tower v. Glover*, 467 U.S. 914, 104 S.Ct. 2820 (1984); *Lynch v. Cannatella*, 810 F.2d 1363 (5th Cir.1987); *Roberts*, 762 F.2d 1022).

[68] 2008 WL 304713, at *9 (E.D. Tex. Jan. 31, 2008).

-12-

the defendants must have been responsible for the attack because they allowed plaintiff and the other

inmate to be escorted in the same area at the same time."[69]    That court dismissed that plaintiff's

conspiracy claim as frivolous because that plaintiff "failed to support his conclusory allegations of

conspiracy with any material facts."[70]    As more specifically set forth above and herein, Inmate Briscoe

has equally failed to support his conclusoray allegations of conspiracy with any material facts.  Thus,

this claim should be deemed frivolous and dismissed as a matter of law.

### C.    Plaintiff's alleged injuries were not the result of any negligent acts or omissions by Dallas Stewart.

Louisiana utilizes the duty-risk analysis when determining liability under general negligence

principals.  As explained by the First Circuit:

> For liability to attach under a duty-risk analysis, a plaintiff must prove: (1) the defendant
> had a duty to conform his conduct to a specific standard (the duty element); (2) the
> defendant failed to conform his conduct to the appropriate standard (the breach of duty
> element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's
> injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal
> cause of the plaintiffs injuries (the scope of liability or scope of protection element); and
> (5) actual damages (the damages element).  *Roberts v. Rudzis*, 2013–0538, p. 9 (La.App.
> 1 Cir. 5/28/14), 146 So.3d 602. 608–609, *writ denied*, 2014–1369 (La.10/3/14), 149
> So.3d 797. A negative answer to any of the inquiries of the duty-risk analysis results in
> a determination of no liability. *Bellanger v. Webre*, 2010–0720, p. 8 (La.App. 1 Cir.
> 5/6/11), 65 So.3d 201, 207, *writ denied*, 2011–1171 (La.9/16/11), 69 So.3d 1149.[71]

With regard to a prison official's duty, the Louisiana Supreme Court has long held that "[w]hile a penal

institution is not an insurer of an inmate against attacks by other inmates, penal authorities have a duty

---

[69] *Id.*

[70] *Id.*; *see also Armond*, 2014 WL 2465932, at *4 (dismissing  conclusory allegations that defendant guard conspired with another inmate to assault the plaintiff); *Hamdan v. Cain*, 2015 WL 3485681, at *8 (M.D. La. June 2, 2015) (dismissing conclusory allegations that defendants conspired to cover up verbal abuse); *Williams v. LeBlanc*, 2013 WL 1181429, at *2 (M.D. La. Feb. 25, 2013), *report and recommendation adopted*, 2013 WL 1181966 (M.D. La. Mar. 20, 2013) (dismissing conclusory allegations that defendants conspired to commit criminal offenses, injure public records and commit malfeasance).

[71] *Catania ex rel. Catania v. Stephens*, 2014-1294 (La.App. 1 Cir. 3/17/15), *writ denied sub nom. Catania v. Stephens*, 2015-0734 (La. 6/1/15); 171 So.3d 933, *and writ denied sub nom. Catania v. Stephens*, 2015-0735 (La. 6/1/15); 171 So.3d 934.

to use reasonable care in preventing harm after they have reasonable cause to anticipate it."[72]  Whether that duty was breached "will depend on the facts and circumstances of each case."[73]  Courts must determine whether prison officials "had reasonable cause to anticipate harm to plaintiff and, if so, whether they failed to use reasonable care in preventing such harm."[74]  For the reasons specifically set forth above, Sgt. Stewart had no reason whatsoever to anticipate an attack was going to occur, and there is no evidence that Sgt. Stewart failed to take reasonable care to prevent the alleged attack.

### D.    Plaintiff Presents no Cognizable Claim for Failure to Intervene

In the interest of judicial efficiency and to avoid unnecessary duplication, Sgt. Stewart incorporates by reference the detailed facts and arguments set forth above.  In sum, Sgt. Stewart was unaware that an attack and/or altercation had occurred until days after the incident.[75]  Col. White specifically testified that during his investigation into the matter, he did not find that Sgt. Stewart had witnessed the attack, and there is no evidence in the record to suggest that she witnessed the altercation. In addition to the investigation completed by Col. White, Inmate Briscoe filed a request for administrative remedies with EHCC, and after that additional review the EHCC determined that there was no information to corroborate Inmate Briscoe's complaint.[76]  There is no evidence to show that Sgt. Stewart failed to intervene in an attack and/or altercation when she was unaware of it.

---

[72] *State ex rel. Jackson v. Phelps*, 95-2294, p. 3 (La. 4/8/96); 672 So.2d 665, 667 (citing *Breaux v. State*, 326 So.2d 481, 482 (La.1976); *Parker v. State*, 282 So.2d 483, 487 (La.), *cert. denied*, 414 U.S. 1093, 94 S.Ct. 724, 38 L.Ed.2d 550 (1973)).

[73] *Id.* (citing *Manasco v. Poplus*, 530 So.2d 548 (La.1988)).

[74] *Id.*

[75] Exh. D, Stewart depo., pp. 81, ll. 8-25 - 82, ll. 1-13.

[76] Exhibit P, Administrative Remedy Procedure (ARPs) filed by Inmate Briscoe.

-14-

**F.      No violation of the Louisiana Constitution Article I, Sec. 20**

Plaintiff makes a broad assertion that Sgt. Stewart's alleged actions and omissions interfered with Plaintiff's right to be free from cruel and unusual punishment guaranteed by Louisiana's Constitution, Art. 1, Sec. 20.  However, as specifically explained herein, the evidence in the record plainly shows that Sgt. Stewart was in no way culpable for the injuries allegedly sustained by Inmate Briscoe, there was nothing she could or should have done to prevent the altercation, and she had no way of knowing that Inmate Briscoe was allegedly in need of medical treatment during her shift.  Accordingly, this claim must also be dismissed.

**<u>CONCLUSION</u>**

As set forth hereinabove, there is no competent evidence in the record upon which a reasonable fact finder could rely to determine that Sgt. Stewart is liable to Plaintiff under any theory of law alleged. Therefore,  Sgt. Stewart is entitled to summary judgment as a matter of law and all claims should be dismissed at Plaintiff's cost.

**Respectfully submitted**, this the 11th day of May, 2023

> **JEFF LANDRY**
> **ATTORNEY GENERAL FOR**
> **THE STATE OF LOUISIANA**
>
> **BY:**      _/s/ Melissa S. Losch_
> **ALEJANDRO "AL" PERKINS (#30288)**
> **Email: aperkins@hamsil.com**
> **MELISSA S. LOSCH, T.A. (#26811)**
> **Email: mloschl@hamsil.com**
> **JOHN R. BLANCHARD (#37036)**
> **Email: jblanchard@hamsil.com**
> **SPECIAL ASSISTANT ATTORNEY GENERAL**
> **HAMMONDS, SILLS, ADKINS AND GUICE**
> 2431 S. Acadian Thruway, Suite 600
> Baton Rouge, Louisiana 70808
> Telephone (225) 923-3462
> Facsimile   (225) 923-0315

## CERTIFICATE OF SERVICE

I do hereby certify that, on the date stated below, a true and correct copy of the above and foregoing **MEMORANDUM** was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to counsel of record by operation of the court's electronic filing system.

**BATON ROUGE, LOUISIANA,** this 11th day of May, 2023

_s/ Melissa S. Losch_
MELISSA S. LOSCH

-16-