UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| SHAWN BRISCOE, | * |
| *Plaintiff* | *   Civil Action No. 19-00029 |
| | * |
| v. | *   JUDGE SHELLY D. DICK |
| | * |
| JAMES LeBLANC, TIMOTHY | *   MAGISTRATE JUDGE |
| HOOPER, DALLAS STEWART, | *   ERIN WILDER-DOOMS |
| AND KENDALA WILLIAMS | * |
| *Defendants* | * |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## STATEMENT OF UNDISPUTED MATERIAL FACTS

**NOW INTO COURT,** through undersigned counsel, comes Dallas Stewart, Defendant in the above-styled cause, and, in support of its contemporaneously filed Motion for Summary Judgment, of submits this Undisputed Statement of Material Facts, as follows:

1. Defendant, Dallas Stewart, accepted a probationary appointment as a cadet with the Elayn Hunt Correctional Center (EHCC) on August 3, 3016.[1]

2. Upon satisfactory conclusion of the probationary term, Dallas Stewart attained permanent status with EHCC on August 14, 2017,[2] and rose to the level of Sergeant on February 15, 2017.[3]

3. At the time of the alleged attack and injuries allegedly sustained that are at issue in the subject litigation Shawn Briscoe was an inmate at EHCC housed in the Fox 7 dormitory.[4]

4. Sgt. Stewart was assigned to Fox 7 dormitory as one of the guards on the twelve (12) hour shift scheduled to begin at 6:00 p.m. on February 2, 2018 and scheduled to end at 6:00 a.m. on February 3, 2018.[5]

5. Shift change occurred on February 3, 2018 at 6:12 a.m.[6]

---

[1] Exhibit A, Acceptance of Probationary Appointment dated August 3, 2016.

[2] Exhibit B, Successful Completion of Probationary Appointment effective August 14, 2017.

[3] Exhibit C, Employee Notification Form.

[4] *See* Rec. Doc. 33, ¶ 1.

[5] Exhibit D, Excerpts of Deposition Transcript of Dallas Stewart (Stewart Depo.), p. 38, ll. 2-25 - p. 39, ll. 1-2.

[6] Exhibit I, Log of Cdt. Williams noting shift change at 6:12 a.m. at which time the next shift came on duty.

6.  Just before shift change, at approximately 5:35:48 a.m., inmate Briscoe was allegedly attacked by another inmate, Darryl Harris ("inmate Harris").

7.  Video footage shows inmate Harris throwing a liquid substance onto inmate Briscoe and striking inmate Briscoe several times, inmate Briscoe jumping onto the beds causing some beds to shift, and then inmate Harris walking away.[7]

8.  The entire altercation between inmate Briscoe and inmate Harris lasted ten (10) seconds, with inmate Harris beginning to walk away at 5:35:58.[8]

9.  Subsequent to the altercation, the video footage shows inmate Briscoe remove his shirt, dry himself off, straighten out his bed, put on shoes and/or socks, retrieve another shirt from his locker and put it on, and walk around the bed apparently drying it off as well.[9]

10. Inmate Briscoe appears calm and in no distress during the remaining video footage.

11. Video footage immediately following the attack shows no attempt by Inmate Briscoe to approach the guards fo any purpose.[10]

12. Plaintiff did not realize he had been stabbed or that he was bleeding until 30-40 minutes after the attack, between 6:05:58 and 6:15:58.[11]

13. During the altercation between inmate Briscoe and image Harris, Dallas Stewart (Defendant), Kendale Williams (dismissed as a defendant for failure to effectuate service), and Master Sergeant Williams (shift supervisor who was not made a party to this lawsuit), were in and around what is termed the "key area" on Fox 7 dormitory.[12]

14. Sgt. Stewart was the individual with red hair on the video footage of the key area on Fox 7 dormitory.[13]

---

[7] Exhibit E, Incident Report; Exhibit F, video footage of incident between inmate Briscoe and inmate Harris (identified by Plaintiff as File20180203053412), time stamp of entire-incident from 5:35:48 a.m. to 5:35:58 a.m.

[8] Exh. F, at time stamp 5:35:48 - 5:35:58; Exhibit Q, Excerpts of Deposition Transcript of Shawn Briscoe (Briscoe Depo.), pp. 27, ll. 19-25 - 28, ll. 1-16 (testifying that the attack was pretty quick, "like a strike").

[9] Exh. F, at time stamp 5:35:59 -5:39:12 (end of footage).

[10] *Id.*

[11] Exh. Q, Briscoe Depo., pp. 39 ll. 24-25 - 41, ll. 1-7.

[12] Exh. D, Stewart depo., pp. 126, ll. 4-25 - 127, ll. 1-14.; Exhibit G, diagram of Fox 7 dormitory. Note that inmate Briscoe and inmate Harris were assigned to D-section (See: Exh. 3, Incident Report).

[13] Exh. D, Stewart depo., p. 127, ll. 15-18.

15. At 5:35:53, Sgt. Stewart stands up and walks to the window overlooking D-Section, the precise time at which inmate Briscoe had jumped over the beds causing them to move and shift.[14]

16. The video-footage directly reflects Sgt. Stewart's account that she heard a commotion sounding like lockers and beds moving around which prompted her to go to the window.[15]

17. Between the time Sgt. Stewart reached the window at 5:35:55 and the time she walked away from the area at 5:37:26, she looked away several times, talking with the shift supervisor.[16]

18. The only individual who continually looked down the tier without interruption was Kendale Williams, the individual who is no longer a party to the lawsuit.[17]

19. Kendale Williams remained at the window by herself until she stepped away at 5:38:27 a.m.[18]

20. During the same time period the fire alarm went off, and Sgt. Stewart walked away from the area to get her supervisor so that he could address the fire alarm issue.[19]

21. Both the fire alarm and the altercation between inmate Briscoe and inmate Harris transpired nearing the end of Sgt. Stewart's shift.[20]

22. The log book contemporaneously maintained shows the fire alarm went off at 5:35 a.m. and was reset at 5:53 a.m., after Sgt. Stewart went to alert her supervisor that he needed to address the alarm.[21]

23. It was not until 8:43 a.m., nearly three (3) hours *after* Sgt. Stewart's shift ended, that inmate Briscoe sought out medical attention.[22]

---

[14] Exh. F, at time-stamp 5:35:53 and Exh. H at time-stamp 5:35:53

[15] Exh. D, Stewart depo., pp. 83, ll. 2-25 - 84, ll. 1-23;

[16] Exh. H, at time-stamp 5:35:51 - 5:37:33; Exh. D, Stewart depo., pp. 40, ll. 4-25; pp. 92, ll. 19-25 - 96, ll. 1-21; pp. 128, ll. 8-25 - 133, ll. 1-18.

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] Exhibit I, relevant page from Kendale Williams' log-book.

[22] Exh. E, Incident Report; Exh. Q, Briscoe Depo., pp. 42, ll. 12-25 - 43, ll. 1-10.

24. The guard on duty, Sergeant Angela Honora ("Sgt. Honora") notified then Major Craig White ("Col. White"), who obtained medical care for inmate Briscoe and conducted an investigation.[23]

25. Video footage at that time shows inmate Briscoe apparently spilling something on himself near the microwave, then pulling off his shirt and writhing around in apparent pain and distress.[24]

26. Inmate Briscoe was picked up by Acadian Ambulance and informed the health care provider(s) that he burned himself while heating up noodles in the microwave.[25]

27. The records from Acadian Ambulance make no reference to stab wounds.[26]

28. At Baton Rouge General Inmate Briscoe asserted that his burns were caused accidentally when he removed a bowl of noodles from the microwave and spilled boiling water on himself at approximately 9:00 a.m. that morning.[27]

29. The records from Baton Rouge General make no reference to stab wounds nor to any treatment for cuts or wounds that could have been the result of being stabbed.[28]

30. The doctor at Baton Rouge General inquired about "tiny, little bitty hole things" with Inmate Briscoe responding that he did not know what happened.[29]

31. Inmate Briscoe does not recall being treated for stab wounds.[30]

32. The EHCC skilled nursing unit records show that inmate Briscoe spilled water from the microwave, not that his injury was caused by an altercation with another inmate.[31]

---

[23] *Id.*

[24] Exhibit J, video footage of inmate Briscoe spilling hot liquid on himself and seeking out medical attention at time-stamp 8:40:33 a.m. - 8:45:18 a.m. (identified by Plaintiff as File20180203083916); Exhibit K, video footage of inmate Briscoe running out of the tier to obtain medical attention at time stamp 8:45:11 a.m. - 8:45:18 a.m. (identified by Plaintiff as File20180203084458.

[25] Exhibit L, relevant portion of Acadian Ambulance Records, confidential information redacted.

[26] *Id.*

[27] Exhibit M, relevant portion of Baton Rouge General records, confidential information redacted; Exh. Q,

[28] *Id.*

[29] Exh. Q, Briscoe Depo., pp. 69, ll. 8-25 - 71, ll. 1-23.

[30] Exh. Q, Briscoe Depo., pp. 72, ll. 8-25 - 73, l. 1; pp. 75, ll. 17-25 - 76, ll. 1-2.

[31] Exhibit N, records from EHCC treatment center, confidential information redacted.

33. The EHCC skilled nursing unit records and make no mention of inmate Briscoe sustaining injuries consistent with stabbing nor of rendering any care for cuts or wounds that could have been the result of being stabbed.[32]

34. The video footage does not show Inmate Briscoe alerting anyone prior to 8:45 a.m. that he was in need of medical attention.[33]

35. After shift change the new guard made rounds and found everything secure at 6:20 a.m., 7:05 a.m., 8:10 a.m., and 8:31 a.m., all before inmate Briscoe spilled hot water on himself and notified EHCC he was in need of medical attention.[34]

36. Col. White's investigation did not reveal that Sgt. Stewart witnessed the altercation between inmate Briscoe and inmate Harris.[35]

37. The reason for Sgt. Stewart's termination was not because the commotion heard by Sgt. Stewart was a breach of security but, rather, the concern over what *could* have happened after the initial altercation if things would have escalated.[36]

38. Inmate Briscoe and inmate Harris were not on each other's enemy list.[37]

39. Col. White was unaware of any issues or concerns between inmate Briscoe and inmate Harris.[38]

40. Inmate Briscoe had access to health care services through sick call 24 hours a day, 7 days a week.[39]

41. Inmate Briscoe filed a requests for administrative remedies with EHCC whereby the EHCC determined that there was no information to corroborate inmate Briscoe's complaints against Sgt. Stewart.[40]

*Signatures on Separate Page*

---

[32] *Id.*

[33] Exh. F, at time stamp 5:35:59 -5:39:12 (end of footage).

[34] See Exh. I, entries by Stg. Honora subsequent to 6:12 a.m.; Exh. Q, Briscoe Depo., pp. 76, ll. 3-25 - 77, ll. 1-20.

[35] Exhibit O, Deposition Excerpt of Lt. Colonel Craig White, pp. 38, ll. 1-25 - 39, ll. 1-16.

[36] Exh. O, Col. White depo., pp. 49, ll. 23-25 - 52, ll. 1-21.

[37] Exh. O, Col. White depo., pp. 53, ll. 6-25 - 54, ll. 1-5.

[38] *Id.*

[39] Exhibit P, Administrative Remedy Procedure (ARPs) filed by Inmate Briscoe.

[40] *Id.*

**Respectfully submitted,** this the 11th day of May, 2023

        **JEFF LANDRY**
        **ATTORNEY GENERAL FOR**
        **THE STATE OF LOUISIANA**

**BY:**    */s/ Melissa S. Losch*
        **ALEJANDRO "AL" PERKINS (#30288)**
        **Email: aperkins@hamsil.com**
        **MELISSA S. LOSCH, T.A. (#26811)**
        **Email: mloschl@hamsil.com**
        **JOHN R. BLANCHARD (#37036)**
        **Email: jblanchard@hamsil.com**
        **SPECIAL ASSISTANT ATTORNEY GENERAL**
        **HAMMONDS, SILLS, ADKINS AND GUICE**
        2431 S. Acadian Thruway, Suite 600
        Baton Rouge, Louisiana 70808
        Telephone (225) 923-3462
        Facsimile   (225) 923-0315

**CERTIFICATE OF SERVICE**

I do hereby certify that, on the date stated below, a true and correct copy of the above and foregoing **STATEMENT** was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the court's electronic filing system.

**BATON ROUGE, LOUISIANA,** this 11th day of May, 2023

                              *s/ Melissa S. Losch*
                              MELISSA S. LOSCH