UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **SHAWN BRISCOE,** *Plaintiff* | * <br> *    Civil Action No. 19-00029 <br> * |
| v. | *    **JUDGE SHELLY D. DICK** <br> * |
| **JAMES LeBLANC, TIMOTHY HOOPER, DALLAS STEWART, AND KENDALE WILLIAMS** *Defendants* | *    **MAGISTRATE JUDGE** <br> *    **ERIN WILDER-DOOMS** <br> * <br> * |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

Defendant, Dallas Stewart ("Sgt. Stewart"), respectfully submits this Reply Memorandum to address Plaintiff, Shawn Briscoe's ("inmate Briscoe"), misstatements of the facts, evidence in the record, and Sgt. Stewart's arguments in his Opposition to Motion for Summary Judgment filed at Rec. Doc. 74. Sgt. Stewart has not addressed every argument presented in Plaintiff's Opposition to the Motion for Summary Judgment but submits this Reply only to those issues that require further response. As explained below, Sgt. Stewart would show that inmate Briscoe fails to present competent evidence in support of his claims, and Sgt. Stewart's Motion for Summary Judgment should be granted.

### PROCEDURAL POSTURE

In the interest of judicial efficiency and to avoid unnecessary duplication, the School Board incorporates by reference the detailed information provided in its initial brief regarding the procedural posture of this case.[1]

---

[1] Record Document 69-2, Memorandum in Support of Motion for Summary Judgement, pp. 1-4.

**FACTS**

In the interest of judicial efficiency and to avoid unnecessary duplication, Sgt. Stewart incorporates by reference the detailed facts and arguments set forth in her Memorandum in Support of Motion for Summary Judgment along with all exhibits attached thereto.[2] Here, Sgt. Stewart will address inaccuracies and unsupported facts submitted in Plaintiff's Opposition.

It is Plaintiff's contention that rather than intervening, Sgt. Stewart was an active participant in the attack, encouraging inmate Harris by shouting "They're getting that bitch Briscoe!"[3] However, a careful review of the video evidence plainly shows that Sgt. Stewart was not yelling towards the tier during the three (3) seconds of the actual "attack," nor the seven (7) seconds following the "attack" until the point where inmate Harris walks away. Specifically, inmate Harris approached inmate Briscoe, threw what appeared to be a liquid substance on him and then struck him in a stabbing motion (the "attack") over the span of three (3) seconds, identified on the video at time-stamp 5:35:48 - 5:35:50.[4] Inmate Briscoe then jumps away from inmate Harris, with Harris apparently in pursuit but failing to reach inmate Briscoe, and ending with Harris walking away at 5:35:58.[5] Meanwhile, from 5:35:48 - 5:35:50, Sgt. Stewart is standing in the key section with her supervisor and with Cadet Williams, not

---

[2] Rec. Doc. 69-2 with supporting documents filed at Rec. Doc. 69-3 through 69-18 and video evidence conventionally filed with the Court. See also Rec. Doc. 69-1, Sgt. Stewart's Statement of Undisputed Material Facts, along with Sgt. Stewart's contemporaneously filed Reply to Rec. Doc. 74-1, Plaintiff's Response to Statement of Undisputed Material Facts.

[3] Rec. Doc. 74, p. 3.

[4] Rec. Doc. 69-8, video placeholder for conventionally filed video, identified as Sgt. Stewart MSJ-Exhibit F and identified by Plaintiff as File20180203053412 (video footage of incident between inmate Briscoe and inmate Harris), at time-stamp 5:35:48 to 5:35:58.

[5] *Id.*

-2-

facing the door but facing her colleagues.[6] At 5:35:50 she hears a noise, moves toward the door at 5:35:53, and stands at the door starting at 5:35:55, after the "attack" was over and three (3) seconds before inmate Harris walked away at 5:35:58.[7] It is clear on the video footage Sgt. Stewart was not talking at all, much less shouting and encouraging inmate Harris, during that short three (3) second time-period before inmate Harris walked away at 5:35:58.[8] In fact, at no point from 5:35:55 to 5:37:26 (when Sgt. Stewart walked away from the area) does the video reflect Sgt. Stewart talking to anyone on the tier or shouting down the tier.[9] Rather, Sgt. Stewart can be seen turning way from the door, looking back and forth, and talking with her supervisor during that time-period, not simply "staring" down the tier as characterized by Plaintiff.[10] The only individual who could be considered to be "staring" down the tier is Ms. Williams, who is no longer a party to this lawsuit.[11]

It is important to also point out the inconsistencies within inmate Briscoe's own evidence regarding the manner in which he came to believe that Sgt. Stewart encouraged the attack by purportedly shouting "They're getting that bitch, inmate Briscoe." In response to Interrogatories, inmate Briscoe stated that he derived that information from Maj. Craig White during the investigation.[12]

---

[6] Rec. Doc. 69-10, video placeholder for conventionally filed video, identified as Sgt. Stewart MSJ-Exhibit H and identified by Plaintiff as File20180203053001 (video footage of guards before, during, and immediately following incident between inmate Briscoe and inmate Harris), at time stamp 5:35:48 to 5:35:58.

[7] *Id.*

[8] *Id.*

[10] Rec. Doc. 74, p. 3.

[11] Rec. Doc. 69-10, video placeholder for conventionally filed video, identified as Sgt. Stewart MSJ-Exhibit H and identified by Plaintiff as File20180203053001, at time stamp 5:35:48 to 5:35:58; Rec. Doc. 43, Dismissal of Kendale Williams as a party to this lawsuit for inability to effectuate service.

[12] Rec. Doc. 55-7, Plaintiff's Exhibit F to Opposition to Defendant's First Motion for Summary Judgement, Response to Interrogatories, p.3-4, response to Interrogatory No. 4.

However, Mr. White's investigation makes no such finding.[13] Then, in inmate Briscoe's declaration, he claimed that he *heard* Sgt. Stewart shout "They're getting that bitch, inmate Briscoe" during the attack.[14] These statements are in direct conflict with one another - either inmate Briscoe learned about Sgt. Stewart's alleged statement after the attack, or he heard the alleged statement during the attack. This is but one example of glaring inconsistencies that call into question the veracity of Plaintiff's self-serving discovery responses, sworn declaration, deposition testimony, and pleadings contained in the record.

Regarding a request for medical care, throughout this litigation inmate Briscoe has asserted and alleged that subsequent to the incident, *he himself* tried to obtain medical assistance from Sgt. Stewart but instead she told *him* to "take your fucking licks, n***a," even to go so far as to specifically state in responses to Interrogatories that *he approached* Sgt. Stewart *by the window* and asked her for assistance.[15] The video footage plainly shows otherwise, as inmate Briscoe did not approach the window following the incident during the time-period Sgt. Stewart was in the vicinity, or at anytime thereafter during the video-footage of the incident.[16] In an effort to overcome this clear evidence,

---

[13] Rec. Doc. 74-3, Investigation of Maj. White.

[14] Rec. Doc. 74-2, Plaintiff's Declaration, ¶ 12.

[15] Rec. Doc. 33, Plaintiff's Second Amended Complaint at ¶¶25-26 ("Immediately following the attack, Mr. Briscoe sought the help of Sgt. Stewart, who was the closest officer on duty"at ¶ 25), ("Sgt. Stewart refused to assist Mr. Briscoe despite his obvious injuries, saying 'take your fucking licks n***a' at ¶ 26); Rec. Doc. 55-7, Plaintiff's Exhibit F to Opposition to Defendant's First Motion for Summary Judgement, Response to Interrogatories, Itr. 5 ("When **Mr. Briscoe sought** the assistance of Sgt. Stewart, she **told him** 'take your fucking licks ni***a' )(emphasis added ), Itr. 7 (**Mr. Briscoe approached Sgt. Stewart by the window** and asked her for assistance. She responded by saying 'take your fucking licks n***a'" )(emphasis added ), and Itr. 8(. . . when **Mr. Briscoe approached Sgt. Stewart at the window** and asked for assistance, she **told him** . . .)(emphasis added).

[16] Rec. Doc. 69-8, video placeholder for conventionally filed video, identified as Stewart MSJ-Exhibit F and identified by Plaintiff as File20180203053412, time stamp 5:35:58 (conclusion of incident) to end of video at 5:39:12, well after Sgt. Stewart had left the area to retrieve a supervisor to address the fire alarm.

inmate Briscoe now asserts that *another inmate* pleaded with the guards for medical assistance, and that Sgt. Stewart told *him* "take your fucking licks, n\*\*\*a".[17] This is contrary to the numerous statements made by inmate Briscoe throughout this litigation as alleged in his Complaint (Rec. Doc. 1, ¶¶ 28 and 29), Amended Complaint (Rec. Doc. 13, ¶¶ 28 and 29), and Second Amended Complaint (Rec. Doc. 33, ¶¶ 25 and 26), and in response several Interrogatories (Rec. Doc. 55-7, Response to Interrogatory Numbers 5, 7, and 8).

Inmate Briscoe's unsuccessful attempts to discredit Sgt. Stewart and point to purported inconsistencies in Sgt. Stewart's testimony that are both insignificant and not at all inconsistent, particularly when taken years after the alleged incident as memories begin to fade.[18] A careful review of the video footage along with the competent testimony and evidence in the record leaves no question that *Sgt. Stewart,* the only Defendant remaining in this lawsuit, is not liable under any theory of law for injuries allegedly sustained as a result of the attack by inmate Harris and/or Plaintiff's later self-imposed injuries. While Sgt. Stewart would aver that neither she nor any of the initially named Defendants should be liable, if there is liability anywhere to be had it does not lay at the feet of Sgt. Stewart.[19]

---

[17] Rec. Doc. 74, p. 3; Rec. Doc. 74-2, Plaintiff's Exhibit A to Opposition, Declaration of Shawn Briscoe, ¶13 (stating ". . . I and . . . another inmate tried to get assistance from the guards, but was told . . ."). Even here inmate Briscoe asserts that he also tried to get assistance from the guards, which is not evidenced in the video. Notably, in this sworn declaration, inmate Briscoe asserts that he tried to get assistance from unnamed guards (plural), not Sgt. Stewart specifically. It may be that inmate Briscoe went to the window at some point to request assistance that is not reflected in later video footage; however, this would have occurred *after* Sgt. Stewart had left the area to seek out a supervisor related to the fire alarm. Thus, there is no evidence that *Sgt. Stewart* was aware of any alleged injuries and refused assistance.

[18] Eg. See Rec. Doc 74, pp. 8-9,Testimony regarding Sgt. Stewart's vision health and whether she was wearing glasses or contact lenses at the time of the event; how far and how much she could see generally down the tier from the relevant vantage point; specifically what she saw the morning of the incident, and specifically what she may have been discussing with her supervisor (though Plaintiff admits in his brief that Sgt. Stewart is turning to her supervisor to "apparently describe events as they unfolded," Rec. Doc. 74, p. 3).

[19] Eg. It was Kendale Williams (no longer a party to this lawsuit) who allegedly took something of value from another inmate in some purported conspiracy, not Dallas Stewart. It was Kendale

**LAW AND ARGUMENT**

**I.     Legal Standard: Rule 56.  There is no competent evidence that raises an issue of disputed material facts and Summary Judgement is Proper.**

Sgt. Stewart incorporates by reference the legal standard set forth in her Memorandum in Support of Motion for Summary Judgement, and does not dispute the standard as set forth by Plaintiff in his Opposition.[20]  It is Plaintiff's application of that standard to the facts and evidence in this case that is problematic.  In his Opposition, Plaintiff relies heavily on his uncorroborated self-serving deposition testimony, sworn declaration, pleadings, and responses to discovery; however, the facts asserted therein are in direct conflict with the testimony and evidence in the record, particularly the clear and indisputable video evidence submitted by Plaintiff in discovery and the medical records from three (3) separate providers relating to inmate Briscoe's treatment on February 3, 2018.  Notably, and as specifically set forth above, even facts as asserted in Plaintiff's Opposition in an attempt to create an issue of fact as to whether or not Plaintiff sought out medical assistance from Sgt. Stewart are in direct conflict with the very documents upon which he relies.[21]

---

Williams who continually looked down the tier during the incident and immediately afterwards, not Dallas Stewart.  It was Kendale Williams and the shift supervisor, Master Sergeant Williams (never made a party to this lawsuit) who remained in the key area after Dallas Stewart walked away at 5:37:36 a.m.  Dallas Stewart's shift ended at 6:00 a.m., and inmate Briscoe did not receive any medical treatment until 8:43 a.m., nearly three hours later, long after her shift had ended.  Hence, if anyone could be liable for inmate Briscoe's alleged injuries (which is at all times denied), it is clearly not Dallas Stewart.  Rather, liability could only lie with Kendale Williams, Master Sergeant Williams, and/or the guards on duty from 6:00 a.m. until 8:43 a.m., when inmate Briscoe received medical attention.

[20] Rec. Doc. 74-2, p. 9; Rec. Doc. 74, p. 4-5.

[21] See argument at p. 3-4 above and at fn. 15 herein.

With respect to alleged injuries, the documents in the record speak for themselves.[22] Plaintiff claims that he sustained and received treatment for stab wounds, citing as support his deposition testimony, declaration, pleadings in the record, discovery responses, and to an investigative report indicating he had injuries consistent with being "hit with a weapon" and that inmate Harris struck him with a "stabbing motion."[23] Sgt. Stewart does not dispute that inmate Briscoe may have been hit with a weapon by inmate Harris and that he may have received some injuries. What she does dispute, and what the evidence reflects, is that inmate Briscoe did not complain to his health care providers on February 3, 2018 that he was suffering injuries from a stab wound, nor that he had even been injured as the result of an alleged attack, instead reporting that he had accidentally burned himself.[24] While Plaintiff suggests that the injuries sustained were cause by his own hand is illogical, the fact that Plaintiff told *all three* health care providers that the accidental spill was the cause of his injuries lends credence to the argument that inmate Briscoe's burn injuries - in whole or in part - were the result of hot soup he spilled on himself as opposed to an attack. This further lends credence to the argument that any stab wounds (if any existed) were simply not severe enough for him to seek out treatment and/or significant enough to be noticed by three different examining health care providers (ambulance personnel,

---

[22] See medical records associated with the incident at issue in this litigation at Rec. Doc. 51-14 (medical records from Acadian Ambulance) Rec. Doc. 69-15 (medical records from Baton Rouge General), and Rec. Doc. 69-16, (medical records from Hunt Correctional Center).

[23] Rec. Doc. 74, pp. 7-8; Rec. Doc. 74-2, Plaintiff's Declaration, ¶¶Rec. Doc. 74-3, Exhibit B to Plaintiff's Opposition, Investigative Report by Major Craig White.

[24] Rec. Doc. 69-14, p. 2, Acadian Ambulance ("Complaint: Burns to left shoulder. History of Present Illness: PT was heating up noodles in the microwave and burn himself with the hot liquid when the cup collapsed and in surprise threw it upward burning his left shoulder");Rec. Doc. 69-15, p.3, Baton Rouge General ("34-year-old African American presents complaining of scald burns to left face, neck, and upper shoulder and back that occurred at approximately 9:00. Pt states he removed a bowl of noodles from the microwave and spilled the boiling water onto himself. He had sensation and described pain 7.5/10 upon arrival"); Rec, Doc. 69-16, Elyan Hunt Correctional Center, p. 2-3 ("34 yr old male with 2nd degree burn to left shoulder, neck top, L chest top, L shoulder. Had soup spilled on him while sitting. Goal of referral: treat & evaluate 2nd degree burns." See also diagram at p. 3).

doctor(s) at Baton Rouge general, and medical staff at Hunt Correctional Center). Furthermore, while it may be fathomable that a medical provider could have neglected to make notes of stab wounds or of any additional discussions as to the cause of Plaintiff's injuries, it is illogical that all three providers forgot to include in the record any contrary explanations discussed as to the source of his injuries, any report of stab wounds, any findings of stab wounds during the examination, and/or any treatment rendered for any stab wounds.

Where, as here, a party's self-serving and unsupported statements are contrary to the competent evidence in the record, such cannot be used as evidence to defeat summary judgment.[25] Due to the numerous conflicts among Plaintiff's pleadings, responses in Interrogatories, deposition testimony, sworn declaration, and facts set forth in the Opposition, it is clear that Plaintiff's self-serving statements are not credible and should not be considered as competent evidence that could create a material issue of fact.

## II. Legal Analysis and Argument

In the interest of judicial efficiency and to avoid unnecessary duplication Sgt. Stewart incorporates by reference the facts and arguments set forth in her Memorandum in Support of Motion for Summary Judgement,[26] and in her reply to Plaintiff's Response to Statement of Undisputed Facts contemporaneously herewith. The evidence is clear and undisputable that Defendant, Dallas Stewart, was not deliberately indifferent towards Plaintiff, there was no failure to intervene, she did not engage

---

[25] *LegacyRG, Incorporated v. Harter,* 705 Fed.Appx. 223, 230 (5th Cir. 2017); citing *Chambers v. Sears Roebuck and Co.*, 428 Fed.Appx. 428 Fed.Appx. 400, 408 (5th Cir. 2011), citing *In re Hinsley*, 201 F.3d 638, 643 (5th Cir.2000) ("A party's self-serving and unsupported claim that she lacked the requisite intent is not sufficient to defeat summary judgment where the evidence otherwise supports a finding of fraud.").

[26] Rec. Doc. 69-2, *in globo.*

-8-

in any sort of conspiracy with respect to Plaintiff, she was not negligent, and there was no violation of the Louisiana Constitution. As such, this matter should be dismissed in its entirety.

## CONCLUSION

The record evidence clearly shows that Sgt. Stewart was in no way culpable for the injuries allegedly sustained by inmate Briscoe, there was nothing she could or should have done to prevent the altercation, and she did not know nor is there any evidence that she should have known that inmate Briscoe was allegedly in need of medical treatment during her shift. Because there is no competent evidence in the record upon which a reasonable fact finder could rely to determine that Sgt. Stewart is liable to Plaintiff under any theory of law alleged, Sgt. Stewart is entitled to summary judgment as a matter of law and all claims should be dismissed at Plaintiff's cost.

**Respectfully submitted,** this the 15th day of June, 2023

**JEFF LANDRY**
**ATTORNEY GENERAL FOR**
**THE STATE OF LOUISIANA**

**BY:**   */s/ Melissa S. Losch*
**ALEJANDRO "AL" PERKINS (#30288)**
**Email: aperkins@hamsil.com**
**MELISSA S. LOSCH, T.A. (#26811)**
**Email: mloschl@hamsil.com**
**JOHN R. BLANCHARD (#37036)**
**Email: jblanchard@hamsil.com**
**SPECIAL ASSISTANT ATTORNEY GENERAL**
**HAMMONDS, SILLS, ADKINS AND GUICE**
2431 S. Acadian Thruway, Suite 600
Baton Rouge, Louisiana 70808
Telephone (225) 923-3462
Facsimile   (225) 923-0315

## CERTIFICATE OF SERVICE

I do hereby certify that, on the date stated below, a true and correct copy of the above and foregoing **MEMORANDUM** was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the court's electronic filing system.

**BATON ROUGE, LOUISIANA,** this 15th day of June, 2023

*s/ Melissa S. Losch*

MELISSA S. LOSCH