## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SHAWN BRISCOE, | * | |
| *Plaintiff* | * | **Civil Action No. 19-00029** |
| | * | |
| v. | * | **JUDGE SHELLY D. DICK** |
| | * | |
| JAMES LeBLANC, TIMOTHY | * | **MAGISTRATE JUDGE** |
| HOOPER, DALLAS STEWART, | * | **ERIN WILDER-DOOMS** |
| AND KENDALA WILLIAMS | * | |
| *Defendants* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Defendant, Dallas Stewart, submits the following proposed findings of fact and conclusions

of law:

### PROPOSED FINDINGS OF FACT

1.    Defendant, Dallas Stewart, accepted a probationary appointment as a cadet with the Elayn Hunt

Correctional Center (EHCC) on August 3, 3016 (Rec. Doc. 69-3).

2.    Upon satisfactory conclusion of the probationary term, Dallas Stewart attained permanent status

with EHCC on August 14, 2017 (Rec. Doc. 69-4), and rose to the level of Sergeant on February

15, 2017 (Rec. Doc. 69-5).

3.    At the time of the alleged attack and injuries allegedly sustained that are at issue in the subject

litigation  Shawn Briscoe was an inmate at EHCC housed in the Fox 7 dormitory (Rec. Doc.

33, ¶ 1.)

4.    Sgt. Stewart was assigned to Fox 7 dormitory as one of the guards on the twelve (12) hour shift

scheduled to begin at 6:00 p.m. on February 2, 2018 and scheduled to end at 6:00 a.m. on

February 3, 2018  (Rec. Doc. 69-6).

5.      Shift change occurred on February 3, 2018 at 6:12 a.m.  (Rec. Doc. 69-11).

6.      Just before shift change, at approximately 5:35:48 a.m., inmate Briscoe was allegedly attacked by  another inmate, Darryl Harris ("inmate Harris") (Rec. Doc. 69-7; Rec. Doc. 69-8; video footage identified as File20180203053412, time stamp of entire-incident from 5:35:48 a.m. to 5:35:58 a.m.).

7.      Video footage shows inmate Harris throwing a liquid substance onto inmate Briscoe and striking inmate Briscoe several times,  inmate Briscoe jumping onto the beds causing some beds to shift, and then inmate Harris walking away (Rec. Doc. 69-7; Rec. Doc. 69-8; video footage identified as File20180203053412, time stamp of entire-incident from 5:35:48 a.m. to 5:35:58 a.m).

8.      The entire altercation between inmate Briscoe and inmate Harris lasted ten (10) seconds, with inmate Harris beginning to walk away at 5:35:58. (Rec. Doc. 69-8; Video Footage identified as File20180203053412, at time stamp 5:35:48 - 5:35:58; Rec. Doc. 69-19, pp. 27, ll. 19-25 - 28, ll. 1-16 (testifying that the attack was pretty quick, "like a strike").

9.      Subsequent to the altercation, the video footage shows inmate Briscoe remove his shirt, dry himself off, straighten out his bed, put on shoes and/or socks, retrieve another shirt from his locker and put it on, and walk around the bed apparently drying it off as well. (Rec. Doc. 69-8; Video Footage identified as File20180203053412, at time stamp 5:35:59 -5:39:12 (end of

footage)).

10.    Inmate Briscoe appears calm and in no distress during the remaining video footage (Rec. Doc. 69-8; Video Footage identified as File20180203053412, at time stamp 5:35:59 -5:39:12 (end of footage)).

11.    Video footage immediately following the attack shows no attempt by Inmate Briscoe to approach the guards fo any purpose (Rec. Doc. 69-8; Video Footage identified as File20180203053412, at time stamp 5:35:59 -5:39:12 (end of footage)).

12.    Plaintiff did not realize he had been stabbed or that he was bleeding until 30-40 minutes after the attack, between 6:05:58  and 6:15:58 (Rec. Doc. 69-19, pp. 39 ll. 24-25 - 41, ll. 1-7).

13.    During the altercation between inmate Briscoe and image Harris, Dallas Stewart (Defendant), Kendale Williams (dismissed as a defendant for failure to effectuate service), and Master Sergeant Williams (shift supervisor who was not made a party to this lawsuit), were in and around what is termed the "key area" on Fox 7 dormitory (Rec. Doc. 60-6, pp. 126, ll. 4-25 - 127, ll. 1-14.; Rec. Doc. 69-7; Rec. Doc. 69-9).

14.    Sgt. Stewart was the individual with red hair on the video footage of the key area on Fox 7 dormitory (Rec. Doc. 60-6, p. 127, ll. 15-18).

15.    At 5:35:53, Sgt. Stewart stands up and walks to the window overlooking D-Section, the precise

-3-

time at which inmate Briscoe had jumped over the beds causing them to move and shift (Rec. Doc. 69-8 at time-stamp 5:35:53 and Rec. Doc. 69-10 at time-stamp 5:35:53).

16.    The video-footage directly reflects Sgt. Stewart's account that she heard a commotion sounding like lockers and beds moving around which prompted her to go to the window (Rec. Doc. 69-6, pp. 83, ll. 2-25 - 84, ll. 1-23).

17.    Between the time Sgt. Stewart reached the window at 5:35:55 and the time she walked away from the area at 5:37:26, she looked away several times, talking with the shift supervisor (Rec. Doc. 69-10, at time-stamp 5:35:51 - 5:37:33; Rec. Doc. 69-6, pp. 40, ll. 4-25; pp. 92, ll. 19-25 - 96, ll. 1-21;  pp. 128, ll. 8-25 - 133, ll. 1-18).

18.    The only individual who continually looked down the tier without interruption was Kendale Williams, the individual who is no longer a party to the lawsuit (Rec. Doc. 69-10, at time-stamp 5:35:51 - 5:37:33; Rec. Doc. 69-6, pp. 40, ll. 4-25; pp. 92, ll. 19-25 - 96, ll. 1-21;  pp. 128, ll. 8-25 - 133, ll. 1-18).

19.    Kendale Williams remained at the window by herself until she stepped away at 5:38:27 a.m. (Rec. Doc. 69-10, at time-stamp 5:35:51 - 5:37:33; Rec. Doc. 69-6, pp. 40, ll. 4-25; pp. 92, ll. 19-25 - 96, ll. 1-21;  pp. 128, ll. 8-25 - 133, ll. 1-18).

20.    During the same time period the fire alarm went off, and Sgt. Stewart walked away from the area to get her supervisor so that he could address the fire alarm issue (Rec. Doc. 69-10, at time-

stamp 5:35:51 - 5:37:33; Rec. Doc. 69-6, pp. 40, ll. 4-25; pp. 92, ll. 19-25 - 96, ll. 1-21;   pp. 128, ll. 8-25 - 133, ll. 1-18).

21.    Both the fire alarm and the altercation between inmate Briscoe and inmate Harris transpired nearing the end of Sgt. Stewart's shift (Rec. Doc. 69-10, at time-stamp 5:35:51 - 5:37:33; Rec. Doc. 69-6, pp. 40, ll. 4-25; pp. 92, ll. 19-25 - 96, ll. 1-21;   pp. 128, ll. 8-25 - 133, ll. 1-18).

22.    The log book contemporaneously maintained shows the fire alarm went off at 5:35 a.m. and was reset at 5:53 a.m., after Sgt. Stewart went to alert her supervisor that he needed to address the alarm (Rec. Doc. 69-11).

23.    It was not until 8:43 a.m., nearly three (3) hours *after* Sgt. Stewart's shift ended, that inmate Briscoe sought out medical attention (Rec. Doc. 69-7; Rec. Doc. 69-19, pp. 42, ll. 12-25 - 43, ll. 1-10).

24.    The guard on duty, Sergeant Angela Honora ("Sgt. Honora") notified then Major Craig White ("Col. White"), who obtained medical care for inmate Briscoe and conducted an investigation (Rec. Doc. 69-7; Rec. Doc. 69-19, pp. 42, ll. 12-25 - 43, ll. 1-10).

25.    Video footage at that time shows inmate Briscoe apparently spilling something on himself near the microwave, then pulling off his shirt and writhing around in apparent pain and distress (Rec. Doc. 69-12, video footage of inmate Briscoe spilling hot liquid on himself and seeking out medical attention at time-stamp 8:40:33 a.m. - 8:45:18 a.m. (identified as File20180203083916);

Rec. Dock. 69-13, video footage of inmate Briscoe running out of the tier to obtain medical attention at time stamp 8:45:11 a.m. - 8:45:18 a.m., identified as File20180203084458).

26.    Inmate Briscoe was picked up by Acadian Ambulance and informed the health care provider(s) that he burned himself while heating up noodles in the microwave (Rec. Doc. 69-14).

27.    The records from Acadian Ambulance make no reference to stab wounds  (Rec. Doc. 69-14).

28.    At Baton Rouge General Inmate Briscoe asserted that his burns were caused accidentally when he removed a bowl of noodles from the microwave and spilled boiling water on himself at approximately 9:00 a.m. that morning (Rec. Doc. 69-15).

29.    The records from Baton Rouge General make no reference to stab wounds nor to any treatment for cuts or wounds that could have been the result of being stabbed (Rec. Doc. 69-15).

30.    The doctor at Baton Rouge General inquired about "tiny, little bitty hole things" with Inmate Briscoe responding that he did not know what happened (Rec. Doc. 69-19, pp. 69, ll. 8-25 - 71, ll. 1-23).

31.    Inmate Briscoe does not recall being treated for stab wounds (Rec. Doc. 69-19, pp. 72, ll. 8-25 - 73, l. 1; pp. 75, ll. 17-25 - 76, ll. 1-2).

32.    The EHCC skilled nursing unit records show that inmate Briscoe spilled water from the

microwave, not that his injury was caused by an altercation with another inmate (Rec. Doc. 69-16).

33.    The EHCC skilled nursing unit records and make no mention of inmate Briscoe sustaining injuries consistent with stabbing nor of rendering any care for cuts or wounds that could have been the result of being stabbed (Rec. Doc. 69-16).

34.    The video footage does not show Inmate Briscoe alerting anyone prior to 8:45 a.m. that he was in need of medical attention (Rec. Doc. 69-8, at time stamp 5:35:59 -5:39:12 (end of footage)).

35.    After shift change the new guard made rounds and found everything secure at 6:20 a.m., 7:05 a.m., 8:10 a.m., and 8:31 a.m., all before inmate Briscoe spilled hot water on himself and notified EHCC he was in need of medical attention (Rec. Doc. 69-11,  entries by Stg. Honora subsequent to 6:12 a.m.; Rec. Doc. 69-19, pp. 76, ll. 3-25 - 77, ll. 1-20).

36.    Col. White's investigation did not reveal that Sgt. Stewart witnessed the altercation between inmate Briscoe and inmate Harris (Rec. Doc. 69-17, pp. 38, ll. 1-25 - 39, ll. 1-16).

37.    The reason for Sgt. Stewart's termination was not because the commotion heard by Sgt. Stewart was a breach of security but, rather, the concern over what *could* have happened after the initial altercation if things would have escalated (Rec. Doc. 69-17, pp. 49, ll. 23-25 - 52, ll. 1-21).

38.    Inmate Briscoe and inmate Harris were not on each other's enemy list (Rec. Doc. 69-17, pp. 53,

ll. 6-25 - 54, ll. 1-5).

39.    Col. White was unaware of any issues or concerns between inmate Briscoe and inmate Harris

(Rec. Doc. 69-17, pp. 53, ll. 6-25 - 54, ll. 1-5).

40.    Inmate Briscoe had access to health care services through sick call 24 hours a day, 7 days a week

(Rec. Doc. 69-18).

41.    Inmate Briscoe filed a requests for administrative remedies with EHCC whereby the EHCC

determined that there was no information to corroborate inmate Briscoe's complaints against

Sgt. Stewart (Rec. Doc. 69-18).

### PROPOSED CONCLUSIONS OF LAW

Considering the above established facts, the Plaintiff's claims must be dismissed for the

following reasons:

### I.    No Cognizable § 1983 Claim for Failure to Protect

In order to state a cognizable claim under § 1983 for failure to protect, a plaintiff must allege

facts which, if true, demonstrate actions that were deliberately indifferent to a substantial risk of

harm.  As articulated by the Fifth Circuit:

> Prison officials have a duty under the Eighth Amendment to protect inmates from
> violence at the hands of other prisoners. However, not every injury by one prisoner
> at the hands of another . . .  translates into constitutional liability for prison officials
> responsible for the victim's safety. To establish a failure-to-protect claim, [plaintiff]
> must show that she was detained under conditions posing a substantial risk of
> serious harm and that [the defendants] were deliberately indifferent to [her] need for
> protection. In order to act with deliberate indifference, the [defendants] must both
> be aware of the facts from which the inference could be drawn that a substantial risk

of serious harm exists, and [they] must also draw the inference.[1]
Further, "[i]n order to show that prison officials were deliberately indifferent to his safety, a plaintiff must show that those officials were aware that the offending co-inmate posed a specific threat to the plaintiff and that those officials consciously disregarded that known threat."[2] "The deliberate indifference standard sets a very high bar, and a claim of mere negligence in failing to protect an inmate from harm is not actionable under § 1983."[3]

In *Robertson v. LeBlanc*, a plaintiff was housed next to a co-inmate who bragged about killing another co-inmate more than twenty (20) years prior and that plaintiff was injured by that co-inmate in a fight.[4]  That plaintiff's failure to protect claim was dismissed, with prejudice, and that court explained that the plaintiff made "no allegation that any defendant was personally aware of a serious threat of potential harm to the plaintiff from the offending co-inmate."[5]  That court noted that " '[p]risons are necessarily-dangerous places,' which 'house society's most antisocial and violent people in close proximity with one another,' thereby making it inevitable that 'some level of brutality ... among prisoners' may occur."[6]

Here, Col. White specifically testified that inmate Briscoe and inmate Harris were not on

---

[1] *Hill v. Thomas*, 326 Fed. Appx. 736, 737 (5th Cir. 2009) (unpublished) (alterations in original) (citations and quotations omitted).

[2] *Robertson v. Gautreaux*, 2017 WL 690542, at *4 (M.D. La. Feb. 21, 2017).

[3] *Id.* (citing *Robertson v. LeBlanc*, 2014 WL 688979, at *4 (M.D. La. Feb. 20, 2014) (citing *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986))).

[4] 2014 WL 688979, at *4-5 (M.D. La. Feb. 20, 2014).

[5] *Id.* at *5.

[6] *Id.* (citing *Farmer*, 511 U.S. at 858-59 (Thomas, J., concurring); *Verrette v. Major*, 2011 WL 3269319, *2 (W .D.La. July 29, 2011)).

each other's enemy list, nor was he aware of any prior issues between the two.[7]  Sgt. Stewart testified

that  she only knew of inmate Briscoe and inmate Harris from their names being on the bed book,

but she had not interacted with either inmate and had no reason to believe there may be a problem

between them.[8]  Thus, there was no evidence of anything that could have alerted Sgt. Stewart there

was any risk of harm, much less a substantial risk of harm.   With respect to Plaintiff's claim that he

was denied medical treatment, as more specifically set forth above, the record is devoid of any

evidence that Plaintiff informed Sgt. Stewart, or any other guard for that matter, of a need for

medical attention until 8:45 a.m., *after* Sgt. Stewart was off duty.  The video footage immediately

following the alleged attack clearly shows Plaintiff made no attempt to inform Sgt. Stewart that he

had been attacked and/or that he was in need of medical care.  Thus, Plaintiff's Eighth Amendment

claims must fail and should be dismissed as a matter of law.

## II.    **No Cognizable Claim of Conspiracy**

> 1.    <u>No evidence of "Conspiracy" pursuant to La. Civil Code art. 2324(A) that
> would render Sgt. Stewart answerable, in solido, for any damages Plaintiff
> alleges he sustained.</u>

Plaintiff has filed a Motion to Dismiss § 1983  conspiracy claims but does not indicate an intent

to dismiss conspiracy claims pursuant to State law (Rec. Doc. 78).  Out of an abundance of caution, this

issue is being addressed for the Court.  The Plaintiff makes a completely conclusory allegation that Sgt.

Stewart and Cadet Williams conspired with another inmate to enable Inmate Harris to allegedly assault

and batter Mr. Briscoe without any evidence whatsoever  in support of such allegation.[9]  The only

"evidence" presented by Mr. Briscoe is a point in the video footage where Cadet Williams, *not* Sgt.

---

[7] Rec. Doc. 69-17, White depo., pp. 53, ll. 6-25 - 54, ll. 1-5.

[8] Rec. Doc. 69-6, Stewart depo., pp. 73, ll. 21-25 - 76, ll. 1-4.

[9] Rec. Doc. 33, p. 9, ¶¶ 58-61

Stewart, appears to take something from an inmate housed in a different section of the Fox 7 dormitory

and place it in her pocket.[10]  Any inference that whatever may have been given to Cadet Williams (if

anything) was tied to the altercation between Inmate Briscoe and Inmate Harris and somehow involved

Sgt. Stewart is simply absurd and there is no evidence in the record upon which a reasonable fact finder

could rely to find a conspiracy that would render Sgt. Stewart liable, *in solido*, for assault and battery

pursuant to La. Civil Code Art. 2324(A).

  2. <u>Failure to State an Actionable § 1983 claim for Conspiracy</u>

  While Plaintiff filed a Motion to Dismiss this claim at Rec. Doc. 78, because an Order has yet

to issue Defendant is addressing this issue out of an abundance of caution.  In order for a plaintiff "[t]o

establish a cause of action based on conspiracy a plaintiff must show that the defendants agreed to

commit an illegal act."[11] "[M]ore than a blanket of accusation is necessary to support a § 1983 claim."[12]

In *Valencia v. Lorimier*, a plaintiff alleged that several defendants conspired to allow other inmates to

attack him.[13]  However, that plaintiff "only offered his subjective belief that the defendants must have

been responsible for the attack because they allowed plaintiff and the other inmate to be escorted in the

same area at the same time."[14]  That court dismissed that plaintiff's conspiracy claim as frivolous because

that plaintiff "failed to support his conclusory allegations of conspiracy with any material facts."[15]  As

---

[10] Rec. Doc. 69-10, at time-stamp 5:33:13 - 5:33:52.

[11] *Hall v. Armond*, 2014 WL 2465932, at *4 (M.D. La. May 30, 2014) (citing *Arseneaux v. Roberts*, 726 F.2d 1022 (5th Cir.1982)).

[12] *Id.* (citing *Tower v. Glover*, 467 U.S. 914, 104 S.Ct. 2820 (1984); *Lynch v. Cannatella*, 810 F.2d 1363 (5th Cir.1987); *Roberts*, 762 F.2d 1022).

[13] 2008 WL 304713, at *9 (E.D. Tex. Jan. 31, 2008).

[14] *Id.*

[15] *Id.*; *see also Armond*, 2014 WL 2465932, at *4 (dismissing conclusory allegations that defendant guard conspired with another inmate to assault the plaintiff); *Hamdan v. Cain*, 2015 WL 3485681, at *8 (M.D. La. June 2, 2015) (dismissing conclusory allegations that defendants conspired to cover up verbal abuse); *Williams v. LeBlanc*, 2013 WL 1181429, at *2 (M.D.

more specifically set forth above and herein, Inmate Briscoe has equally failed to support his conclusoray allegations of conspiracy with any material facts. Thus, this claim should be deemed frivolous and dismissed as a matter of law.

## III.     Plaintiff's alleged injuries were not the result of any negligent acts or omissions by Dallas Stewart.

Louisiana utilizes the duty-risk analysis when determining liability under general negligence principals. As explained by the First Circuit:

> For liability to attach under a duty-risk analysis, a plaintiff must prove: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiffs injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element). *Roberts v. Rudzis*, 2013–0538, p. 9 (La.App. 1 Cir. 5/28/14), 146 So.3d 602. 608–609, *writ denied*, 2014–1369 (La.10/3/14), 149 So.3d 797. A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability. *Bellanger v. Webre*, 2010–0720, p. 8 (La.App. 1 Cir. 5/6/11), 65 So.3d 201, 207, *writ denied*, 2011–1171 (La.9/16/11), 69 So.3d 1149.[16]

With regard to a prison official's duty, the Louisiana Supreme Court has long held that "[w]hile a penal institution is not an insurer of an inmate against attacks by other inmates, penal authorities have a duty to use reasonable care in preventing harm after they have reasonable cause to anticipate it."[17] Whether that duty was breached "will depend on the facts and circumstances of each case."[18] Courts must determine whether prison officials "had reasonable cause to anticipate harm to plaintiff and, if so,

---

La. Feb. 25, 2013), *report and recommendation adopted*, 2013 WL 1181966 (M.D. La. Mar. 20, 2013) (dismissing conclusory allegations that defendants conspired to commit criminal offenses, injure public records and commit malfeasance).

[16] *Catania ex rel. Catania v. Stephens*, 2014-1294 (La.App. 1 Cir. 3/17/15), *writ denied sub nom. Catania v. Stephens*, 2015-0734 (La. 6/1/15); 171 So.3d 933, *and writ denied sub nom. Catania v. Stephens*, 2015-0735 (La. 6/1/15); 171 So.3d 934.

[17] *State ex rel. Jackson v. Phelps*, 95-2294, p. 3 (La. 4/8/96); 672 So.2d 665, 667 (citing *Breaux v. State*, 326 So.2d 481, 482 (La.1976); *Parker v. State*, 282 So.2d 483, 487 (La.), *cert. denied*, 414 U.S. 1093, 94 S.Ct. 724, 38 L.Ed.2d 550 (1973)).

[18] *Id.* (citing *Manasco v. Poplus*, 530 So.2d 548 (La.1988)).

whether they failed to use reasonable care in preventing such harm."[19]  Sgt. Stewart had no reason whatsoever to anticipate an attack was going to occur, and there is no evidence that Sgt. Stewart failed to take reasonable care to prevent the alleged attack.

## IV.    Plaintiff Presents no Cognizable Claim for Failure to Intervene

While Plaintiff filed a Motion to Dismiss this claim at Rec. Doc. 78, because an Order has yet to issue Defendant is addressing this issue out of an abundance of caution.  In sum, Sgt. Stewart was unaware that an attack and/or altercation had occurred until days after the incident.[20]  Col. White specifically testified that during his investigation into the matter, he did not find that Sgt. Stewart had witnessed the attack, and there is no evidence in the record to suggest that she witnessed the altercation. In addition to the investigation completed by Col. White, Inmate Briscoe filed a request for administrative remedies with EHCC, and after that additional review the EHCC determined that there was no information to corroborate Inmate Briscoe's complaint.[21]

## V.    No violation of the Louisiana Constitution Article I, Sec. 20

Plaintiff makes a broad assertion that Sgt. Stewart's alleged actions and omissions interfered with Plaintiff's right to be free from cruel and unusual punishment guaranteed by Louisiana's Constitution, Art. 1, Sec. 20.  However, the evidence in the record plainly shows that Sgt. Stewart was in no way culpable for the injuries allegedly sustained by Inmate Briscoe, there was nothing she could or should have done to prevent the altercation, and she had no way of knowing that Inmate Briscoe was allegedly in need of medical treatment during her shift.  Accordingly, this claim must be denied.

---

[19] *Id.*

[20] Rec. Doc. 79-6, Stewart depo., pp. 81, ll. 8-25 - 82, ll. 1-13.

[21] Rec. Doc. 69-18, Administrative Remedy Procedure (ARPs) filed by Inmate Briscoe.

**Respectfully submitted,** this the 20th day of June, 2023

                    **JEFF LANDRY**
                    **ATTORNEY GENERAL FOR**
                    **THE STATE OF LOUISIANA**

**BY:**       /s/John R. Blanchard
                    **ALEJANDRO "AL" PERKINS (#30288)**
                    **Email: aperkins@hamsil.com**
                    **JOHN R. BLANCHARD (T.A.) (#37036)**
                    **Email: jblanchard@hamsil.com**
                    **MELISSA S. LOSCH (#26811)**
                    **Email: mlosch@hamsil.com**
                    **SPECIAL ASSISTANT ATTORNEY GENERAL**
                    **HAMMONDS, SILLS, ADKINS AND GUICE**
                    2431 S. Acadian Thruway, Suite 600
                    Baton Rouge, Louisiana 70808
                    Telephone (225) 923-3462
                    Facsimile  (225) 923-0315

## CERTIFICATE OF SERVICE

I do hereby certify that, on the date stated below, a true and correct copy of the above and foregoing **STATEMENT** was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to counsel of record by operation of the court's electronic filing system.

**BATON ROUGE, LOUISIANA,** this 20th day of June, 2023

                                        s/ John R. Blanchard
                                        JOHN R. BLANCHARD

-14-