UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

SHAWN BRISCOE

versus

DALLAS STEWART, et al

CIVIL ACTION

19-29-SDD-SDJ

### RULING

Before the Court is the *Motion for Summary Judgment*[1] filed by Defendant, Sergeant Dallas Stewart ("Sgt. Stewart"). Plaintiff Shawn Briscoe ("Briscoe") filed an *Opposition*,[2] to which Stewart filed a *Reply*.[3] For the reasons that follow, the Court finds that the *Motion* shall be DENIED.

### I.    BACKGROUND

This matter arises out of a physical attack suffered by Briscoe while he was incarcerated at Elayn Hunt Correctional Center ("EHCC"). Briscoe claims he was stabbed and severely burned by fellow inmate Darryl Harris ("Harris") while residing in Fox 7 dormitory on February 3, 2018. Sgt. Stewart was on guard duty when the incident occurred, and Briscoe claims she failed to protect him and/or provide him with medical aid following the attack.[4]

Many of the pertinent facts are disputed. However, video footage of the incident shows that at approximately 5:35:48 AM, Harris approached Briscoe's bed, threw a liquid substance onto Briscoe, and began physically striking him before walking away.[5] The

---

[1] Rec. Doc. 69.
[2] Rec. Doc. 74.
[3] Rec. Doc. 77.
[4] Rec. Doc. 33.
[5] Rec. Doc. 77-1, p. 3; Rec. Doc. 69-8.

altercation lasted approximately ten seconds and resulted in the beds of various inmates being pushed along the floor.[6]

Sgt. Stewart and two other prison officials were stationed in a secure area adjoining the dormitory, known as the "key area," when the incident occurred.[7] Video footage of the key area shows Sgt. Stewart standing up and walking to the window overlooking the dormitory at 5:35:53 AM—precisely when the beds shifted along the floor due to the scuffle.[8] She and another prison official stood near the window for approximately two minutes before Sgt. Stewart walked away.[9] She claims she left the window to inform her supervisor of an active fire alarm, which records show was triggered at the same time as Harris and Briscoe's altercation.[10] She did not make rounds or check on the inmates following the incident.[11] Shortly thereafter, Sgt. Stewart's shift ended. Records show she was replaced by a new guard at approximately 6:12 AM.[12] There is no evidence in the record that shows that Briscoe sought medical attention from prison officials before 8:45 AM.

Rather, video evidence shows that after the attack, Briscoe removed his shirt, dried himself off, and changed into clothes retrieved from his locker.[13] At 8:40 AM, Briscoe is seen spilling a substance on himself near the dormitory's microwave before taking off his shirt and writhing around in distress.[14] He sought medical aid from the new guards on

---

[6] Rec. Doc. 77-1, p. 3; Rec. Doc. 69-8.
[7] Rec. Doc. 74-5, p. 32-33.
[8] Rec. Doc. 77-1, p. 6; Rec. Doc. 69-8.
[9] Rec. Doc. 77-1, p. 7; Rec. Doc. 69-8.
[10] Rec. Doc. 77-1, p. 8.
[11] Rec. Doc. 74-4, p. 38-40.
[12] Rec. Doc. 77-1, p. 2.
[13] Rec. Doc. 77-1, p. 3-4; Rec. Doc. 69-8.
[14] Rec. Doc. 77-1, p. 9; Rec. Doc. 69-8.

duty and was ultimately taken to Baton Rouge General Hospital.[15] There, he told a provider that he accidently burned himself with hot liquid while cooking in the microwave.[16] The medical records before the Court do not reflect that Briscoe complained of or received treatment for stab wounds.[17]

However, Briscoe testified that the doctor who treated him inquired about small holes on his body, but Briscoe told the doctor he was unsure of what caused them.[18] Briscoe testified that he was reluctant to tell doctors about the attack for fear of retaliation from fellow inmates should he be labeled a "snitch."[19] He claims that he went into "survival mode" immediately following the attack and did not realize he had been stabbed until sometime later.[20] Briscoe claims that the fear of retaliation prevented him from seeking medical attention immediately after the attack.

Briscoe testified that when he and another inmate eventually sought help from Sgt. Stewart, she told him to "take [his] licks."[21] He claims that prior to the attack, when he was entering the Fox 7 dormitory, Sgt. Stewart remarked, "Oh they're letting rats back in the dorm, huh?"[22] He also claims that during the attack Sgt. Stewart shouted, "They're getting that bitch Briscoe!" and did nothing to protect Briscoe despite witnessing the scuffle.[23] Plaintiff postulates that Sgt. Stewart's lack of action in response to the attack resulted in her termination.[24]

---

[15] Rec. Doc. 77-1, p. 10-11.
[16] *Id.*
[17] Rec. Doc. 77-1, p. 10-12.
[18] *Id.;* Rec. Doc. 74-11, p. 69-70, p. 124.
[19] Rec. Doc. 74-11, p. 69-70, p. 86, p. 124.
[20] Rec. Doc. 77-1, p. 4-5; Rec. Doc. 74-11, p. 108.
[21] Rec. Doc. 77-1, p. 9.
[22] Rec. Doc. 74-11, p. 84.
[23] Rec. Doc. 74-2, p. 2.
[24] Rec. Doc. 74-1, p. 7.

3

In contrast, Sgt. Stewart claims her knowledge of Briscoe was limited to seeing his name on a bed book for the dormitory.[25] She denies ever speaking to him.[26] Although her testimony was somewhat inconsistent on what she could see when looking through the window into the dormitory, she denies witnessing the incident between Briscoe and Harris.[27] She denies having knowledge of Briscoe's injuries before she left EHCC at the end of her shift.[28] Finally, she claims her termination was not in response to her failure to check the dormitory after the incident but rather resulted from her employer's concerns over what *could* have happened had tensions among the inmates escalated after the initial altercation.[29]

Briscoe filed this suit alleging that Sgt. Stewart and others who have been dismissed from the suit conspired for Briscoe to be attacked, stood by and watched the attack occur without intervening, and failed to obtain medical treatment for his injuries.[30] After Sgt. Stewart filed her *Motion for Summary Judgment*, Briscoe voluntarily dismissed the claims of civil conspiracy, assault and battery, and failure to intervene asserted in the *Second Amended Complaint*.[31] Accordingly, only the following claims against Sgt. Stewart remain: 1) violations of the Eighth Amendment pursuant to 42 U.S.C. § 1983 for failure to protect and deliberate indifference to Briscoe's medical needs; 2) state law negligence claims; and 3) violations of Louisiana Constitution Article 1, § 20 for interfering with Briscoe's right to be free from cruel and unusual punishment.

---

[25] Rec. Doc. 74-5, p. 74.
[26] *Id*.
[27] Rec. Doc. 74-5, p. 92-93, 97-98, 171-72.
[28] Rec. Doc. 74-5, p. 123-24.
[29] Rec. Doc. 69-2, p. 5.
[30] Rec. Doc. 33.
[31] Rec. Doc. 78; Rec. Doc. 33.

4

## II. LAW & ANALYSIS

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[32] "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[33] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[34] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[35] However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[36]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[37] All reasonable factual inferences are drawn in favor of the nonmoving party.[38] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary

---

[32] Fed. R. Civ. P. 56(a).
[33] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).
[34] *Guerin v. Pointe Coupee Par. Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. Jan. 10, 2003) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986)).
[35] *Rivera v. Houston Indep. Sch. Dist.,* 349 F.3d 244, 247 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[36] *Willis v. Roche Biomedical Labs., Inc.,* 61 F.3d 313, 315 (5th Cir. 1995) (quoting *Little*, 37 F.3d at 1075).
[37] *Pylant v. Hartford Life and Accident Ins. Co.*, 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[38] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[39] "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without "any significant probative evidence tending to support the complaint."'"[40]

### B. Violations of the Eighth Amendment Pursuant to 42 U.S.C. § 1983

Prison officials have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates.[41] However, not every injury suffered by one prisoner at the hands of another translates into constitutional liability for the prison officials on duty.[42] A prison official only violates the Eighth Amendment's prohibition against "cruel and unusual punishment" when two requirements are met. "To succeed on a claim for failure to protect, an inmate must show that (1) he was 'incarcerated under conditions posing a substantial risk of serious harm,' and that (2) a prison official was 'deliberately indifferent' to this risk."[43]

Deliberate indifference to a prisoner's serious medical needs also constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment.[44] "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care."[45] Here, Briscoe claims Sgt. Stewart acted with deliberate indifference in

---

[39] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[40] *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249).
[41] *Farmer v. Brennan,* 511 U.S. 825, 832–33 (1994).
[42] *Id.* at 834.
[43] *Hall v. Armond*, CIV.A. 12-677-SDD, 2014 WL 2465932, at *2–3 (M.D. La. May 30, 2014) (quoting *Farmer,* 511 U.S. at 834).
[44] *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) (internal citations omitted).
[45] *Id.*

both failing to protect him from harm and by failing to call for medical help following the attack.

The deliberate indifference standard is "an extremely high standard to meet."[46] A prison official is "deliberately indifferent" to a risk when he "knows of and disregards an excessive risk to inmate health or safety."[47] A prisoner asserting a claim for failure to protect does not need to show that an official acted or failed to act while believing that the prisoner would actually suffer harm; rather, it is sufficient that the official acted or failed to act despite having knowledge of a substantial risk of serious harm.[48] The official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[49] Whether the official has the requisite knowledge of a substantial risk is a question of fact, which may be shown by circumstantial evidence.[50]

In her *Motion for Summary Judgment*, Sgt. Stewart compares this matter to *Robertson v. LeBlanc*, where the Court dismissed an inmate's claims against prison officials for failure to protect the inmate from a fight, as "the plaintiff makes no allegation that any defendant was personally aware of a serious threat of potential harm to the plaintiff from the offending co-inmate."[51] Sgt. Stewart claims that, like the inmates in *Robertson*, here, there is no evidence that Harris and Briscoe had a history of conflict.

It is undisputed that Briscoe and Harris were not on each other's enemy list as recorded by EHCC officials.[52] However, there are material disputes of fact regarding Sgt.

---

[46] *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001).
[47] *Farmer*, 511 U.S. at 837.
[48] *Id.*
[49] *Farmer*, 511 U.S. at 837.
[50] *Id.* at 842.
[51] *Robertson v. LeBlanc*, CIV.A. 13-171-SDD-RL, 2014 WL 688979, at *5 (M.D. La. Feb. 20, 2014).
[52] Rec. Doc. 74-4, p. 53; Rec. Doc. 77-1, p. 14.

7

Stewart's awareness of the risks presented to Briscoe. Competing testimony exists as to whether Sgt. Stewart only knew of Briscoe from seeing his name in the bed book, or whether she recognized him upon his return to the Fox 7 dormitory and referred to him as a "rat."[53] Although she claims there is no evidence to alert her to the risk of harm that Briscoe would be attacked, Sgt. Stewart testified that she was aware of the dangers presented to those who had a reputation as a "rat" or "snitch" in prison.[54]

The parties have also presented competing evidence regarding the lack of medical care provided to Briscoe following the attack. There is a dispute as what Sgt. Stewart could see through the window of the key area overlooking the Fox 7 dormitory; whether she was aware that Briscoe had been injured before she left EHCC; and whether she told Briscoe to "take [his] licks" instead of calling for medical assistance.[55] While Sgt. Stewart dismisses Briscoe's allegations as self-serving and lacking credibility, issues of witness credibility preclude the Court from granting summary judgment.

The Court finds that material disputes of fact exist as to whether Sgt. Stewart was aware of the risk of harm to Briscoe or his need for medical attention after the attack. This is distinct from *Robertson*, where claims against prison officials were dismissed "[i]n the absence of any suggestion that the defendants, by their actions, intended to cause the plaintiff harm or disregarded an obvious threat to the plaintiff's safety of which they were subjectively aware."[56] Sgt. Stewart's *Motion for Summary Judgment* is denied with respect to Briscoe's Eighth Amendment claims.

---

[53] Rec. Doc. 74-11, p. 84; Rec. Doc. 74-5, p. 74.
[54] Rec. Doc. 74-5, p. 29-31.
[55] Rec. Doc. 74-5, p. 92-93, 97-98, 171-72; Rec. Doc. 77-1, p. 9.
[56] *Robertson*, 2014 WL 688979, at *5.

## C. Negligence Claims

For these same reasons, summary judgment is precluded as to Briscoe's state law negligence claims for failing to protect and/or provide Briscoe with medical care. It is undisputed that Briscoe did not receive medical attention until after Sgt. Stewart's shift ended. However, issues of material fact preclude finding that the harm suffered by Briscoe cannot be attributable, in part, to negligent acts or omissions of Sgt. Stewart. DOC investigator Craig White testified that Sgt. Stewart's failure to take action and inspect the dormitory following the altercation was serious enough to warrant her termination.[57] Sgt. Stewart argues that Briscoe would not have reported his injuries even if she checked the area following the altercation, but this conclusory allegation is insufficient to warrant summary dismissal of Briscoe's claims.

## D. Violations of Louisiana Constitution

Briscoe asserts claims against Sgt. Stewart for her alleged interference with Briscoe's right to be free from cruel and unusual punishment as guaranteed by Louisiana's Constitution, Article I, § 20. Sgt. Stewart moves for summary dismissal of this claim by arguing that the record is devoid of evidence suggesting that she could or should have prevented the attack on Briscoe or that she should have known that he needed medical care following the attack. For the same reasons already addressed by the Court, summary judgment is denied as to this claim.

---

[57] Rec. Doc. 74-4, p. 51-52.

### III. CONCLUSION

For the reasons set forth above, the *Motion for Summary Judgment*[58] filed by Defendant, Sergeant Dallas Stewart, is hereby DENIED.

**IT IS ORDERED.**

Baton Rouge, Louisiana, this  27th  day of June, 2023.

_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

!

---

[58] Rec. Doc. No. 51.